**Allen KAISER, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 12317.**

United States Court of Appeals
Seventh Circuit.

Dec. 22, 1958.

Max Raskin, Milwaukee, Wis., Harold Cranefield, Detroit, Mich., for appellant.

Charles K. Rice, Asst. Atty. Gen., S. Carter Bledsoe, Tax Division, U. S. Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Francis L. McEl-

ligott, Asst. U. S. Atty., Milwaukee, Wis., Joseph F. Goetten, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., for appellee.

Julius M. Greisman, Arthur J. Goldberg, Carolyn E. Agger, Stevenson, Paul, Rifkind, Wharton & Garrison, Elliot Bredhoff, Associate Gen. Counsel, Industrial Union Dept., AFL-CIO, Washington, D. C., for Industrial Union Dept., AFL-CIO, as amicus curiae.

Before DUFFY, Chief Judge, and MAJOR and KNOCH, Circuit Judges.

DUFFY, Chief Judge.

This is a suit to recover an alleged overpayment of income taxes for the year 1954. The question presented is whether strike benefits received from a union by a worker while on strike is taxable income or, in the alternative, gifts which are exempt from income tax. The jury in the District Court found the strike benefits received by plaintiff were gifts. Subsequently, the trial court set aside the verdict of the jury and entered a judgment for the defendant dismissing the complaint herein.

On April 5, 1954, plaintiff Allen Kaiser was an employee of Kohler Company of Kohler, Wisconsin. On and before said date, Local 833 UAW, an affiliate of the International Union UAW, was the certified collective bargaining agent for the production and maintenance workers employed by Kohler Company. Not all of such employees were members of the Union.

On April 5, 1954, in concert with other employees, plaintiff Kaiser went out on strike. On that date he was not a member of the Union and did not apply for membership until August 19, 1954. During the strike he did not receive any benefits in cash, but commencing May 4, 1954, he received from the Union maintenance assistance in the form of food, clothing and payments of rent on the house which he occupied with his wife and two children. The funds from which the strike benefits were distributed were derived from the local Union, the International Union, and contributions from other unions, organizations and individuals.

On April 15, 1955, Kaiser filed with the Director of Internal Revenue for the District of Wisconsin, an income tax return showing wages received in the year 1954 in the amount of $2,669.48 with a tax liability of $359.00. As wages withheld totaled $388.84, he claimed a refund. On February 17, 1956, the Director, by audit, increased the adjusted gross income by adding $565.54, the value of the maintenance assistance received by plaintiff. This resulted in a tax of $467. The plaintiff paid the sum of $108.00 as additional tax plus interest, and sued for a refund.

The basic condition for receiving strike assistance was the actual present need of the individual worker. By questionnaire, it was determined whether he needed food, clothing and shelter. Such assistance was not a matter of right like unemployment compensation. When plaintiff received his assistance, he neither gave nor promised anything in return. He was not required to render any service to the Union.

The learned trial judge apparently assumed that strike benefits constitute taxable income unless they are excepted as gifts. He relied on the broad scope of the definition in Sec. 61(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 61(a) that "gross income means all income from whatever source derived." However, the Commissioner has long acknowledged that the concept of taxable income does not include all receipts even though such receipts were not specifically excepted from taxable income by statute. The Commissioner has ruled that income did not include damages for alienation of affections,[1] damages for breach of promise to marry,[2] an award under a wrongful death statute,[3] and

---

1. I.T. 1804, II-2 Cum.Bull. 61 (1923).

2. G.C.M. 4363, VII-2 Cum.Bull. 185 (1928).

3. See I.T. 2420, VII-2 Cum.Bull. 123 (1928).

payments to war prisoners for mistreatment by their captors.[4] Despite the absence of express statutory authority, the Commissioner has refused to subject to income tax the receipt of retirement benefits paid under the Federal Old Age and Survivors Insurance System,[5] unemployment compensation benefits paid by a state,[6] and public assistance relief payments.[7]

Public assistance benefits which have been ruled not to be taxable also provide an analogy to strike benefits. Both provide relief to the indigent. Strike benefits are intended to prevent want as are public assistance benefits.

In 1952, the Commissioner ruled that receipt of food and medical supplies and other forms of subsistence from the American Red Cross by a disaster victim did not represent taxable income.[8] About a year later, the Commissioner ruled that rehabilitation payments made to victims of a tornado disaster from a special fund set up by a large employer in the area for the benefit of his employees and their families "do not come within the concept of gross income under the provisions of § 22(a) of the [1939] Code." [9] The Commissioner emphasized that the contributions were measured solely by need.

■ We hold that the strike benefits received by plaintiff under the facts of this case are not taxable income. The question as to whether such benefits received under other circumstances might constitute taxable income is, of course, not presented on this record.

■■ In any event, the strike benefits received by plaintiff were gifts which are expressly excepted from taxable income by § 102, Internal Revenue Code of 1954, 26 U.S.C.A. § 102. There is substantial evidence in this record to sustain the finding of the jury. In United States v. Burdick, 3 Cir., 214 F.2d 768, 771, the Court said: "As we held in Smith v. Manning, [3 Cir.,] 1951, 189 F. 2d 345, 348 whether the receipts are gifts is primarily a question of fact * * *."

The trial court adequately submitted the question of gift to the jury. Excerpts from the court's instructions are as follows:

"Compensation for refraining from labor is taxable income * * ";

"If it was the intention of the Union to pay for services, these payments are income";

"If these payments were made by the Union because of any obligation, either legal or moral * * * then the payments were not gifts and you should answer the question 'no'";

"If the payments were made as compensation for services, even though the Union did not consciously have that intent, they constitute income and not gifts."

After listening to and considering these instructions, the jury found that the strike benefits received by plaintiff were gifts.

In overruling and setting aside the verdict of the jury, the trial court was of the view that the strike benefits were made available to plaintiff pursuant to a moral obligation of the International Union to its members. However, the Union surely did not owe an obligation to plaintiff. He was not a member of the Union for four and a half months after the strike began, and yet he received strike benefits. Furthermore, there was testimony which the jury was entitled to believe that it was discretionary with the Union whether any strike benefits were to be distributed.

The second basis for the District Court's decision was that the Union ex-

---

4. Rev.Rul. 55–132, 1955–1 Cum.Bull. 213.

5. I.T. 3447, 1941–1 Cum.Bull. 191.

6. I.T. 3230, 1938–2 Cum.Bull. 136.

7. Rev.Rul. 57–102, 1957–1, Cum.Bull. 26.

8. Spec.Rul. of I.R.S., 5 Stan.Fed.Tax.Rep. § 6196.

9. Rev.Rul. 131, 1953–2 Cum.Bull. 112.

acted continued participation by plaintiff in the strike in return for receiving strike benefits. In other words, the Union, by giving plaintiff strike benefits valued at about $17 per week, for a period of eight months, has exacted from plaintiff his continued participation in the strike and abstaining from work which previously netted him $166 a week.

The answer to this contention is that if plaintiff, while remaining on strike at Kohler, had found temporary employment elsewhere, his strike benefits would have ceased. The same would have been true if members of his family had found employment, because the basic condition of receiving benefits was the present need of the plaintiff.

It seems clear that the strike benefits which were paid plaintiff were completely unrelated to his former earnings. The factor determining the amount of benefits paid to him was his personal need, his marital status and the number of dependents. The benefits were given because he and his family were in need after he ceased working. Such payments were consistent only with charity. We hold they were gifts and were not taxable.

The District Court placed reliance on O.D. 552, 2 Cum.Bull. 73 (1920) in which the Commissioner ruled that "Benefits received from a labor union by an individual *member* (emphasis supplied) while on strike are to be included in his gross income * * *" Although little if any attention seems to have been given to this obscure ruling from 1920 to 1957, the learned trial judge stated it must be held to have received Congressional approval and to have assumed the force and effect of law.

This 1920 ruling did not cover strike benefits paid by a union to non-members or to a situation where a union paid strike benefits to both members and non-members alike. In any event, the so-called reenactment doctrine is more

properly applied to regulations, which have the force of law, than to rulings.[10] It has been said the rules have "no more binding or legal force than the opinion of any other lawyer." [11]

Significant also on the weight to be given to this 1920 ruling is the statement of the Supreme Court in the late case of Commissioner of Internal Revenue v. Glenshaw Glass Company, 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 " * * * Re-enactment—particularly without the slightest affirmative indication that Congress ever had the Highland Farms decision (Highland Farms Corp., 42 B.T.A. 1314) before it—is an unreliable indicium at best. * * *" This statement is particularly appropriate here, as the Government has made no showing that the 1920 rule was ever considered by Congress.

Reversed.

KNOCH, Circuit Judge (dissenting).

As indicated in the opinion of Chief Judge DUFFY, the sole question here presented is whether strike benefits received from a union by a striking worker are taxable income to him.

Chief Judge DUFFY concludes that the benefits received are nontaxable gifts. After careful consideration of the case, I regretfully find myself unable to agree.

It is true that the plaintiff, a non-member of the Union, was given strike benefits only after he had shown himself to be in need of food, clothing and shelter. The amount of aid given was based, not on his former earnings, but on his personal need, marital status and number of dependents. Such benefits would not have been given, or would have terminated, regardless of his continued participation in the strike, had his need ceased to exist through receipt of income from any other source by him or a member of his family.

However, his need was a secondary qualification to which consideration was given only after he had met the primary

10. Bartels v. Birmingham, 332 U.S. 126, 132, 67 S.Ct. 1547, 91 L.Ed. 1947.

11. United States v. Bennett, 5 Cir., 186 F.2d 407, 410.

qualification: participation in the strike. Had he not met that primary qualification, he would have received no benefits. Had he ceased to meet that primary qualification, his benefits would have terminated notwithstanding the extent of his personal need, or whether he was a member of the Union or not. The fact that these benefits were paid to members and non-members alike emphasizes the real reason for payment, namely, either class must be in necessitous circumstances, but, above all, must be on strike.

The District Court clearly indicated that the case was allowed to go to the jury only to present a full record on appeal.

Determination of the character of the strike benefits presented a question of law. All the facts, including the Union's motivation and intent, were fully disclosed by stipulation of facts and uncontroverted testimony. Bogardus v. Commissioner, 1937, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed 32; Old Colony Trust Co. v. Commissioner, 1928, 279 U.S. 716, 49 S. Ct. 499, 73 L.Ed. 918.

The Union did require consideration for the strike benefits bestowed on plaintiff. It was stipulated by the parties:

"The International Union grants strike benefits to non-members of the Union, who participate in a strike, if they do not have sufficient income to purchase food or to meet an emergency situation. The Union treats such non-members on the same basis as members of the Union, but non-members as well as members must be strikers before they may receive assistance from the Union."

The Court instructed the jury that compensation for refraining from labor is taxable income. The majority opinion holds that this was a question to be resolved by the jury. In the light of the stipulated facts it is my opinion that there was a question of law only, and that no factual issue remained to be presented to the jury.

I would affirm the District Judge's ruling that " 'viewing the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to plaintiff' (citing cases) as a matter of law the strike benefits constituted taxable income and not a gift."

The District Court inferred Congressional approval from repeated re-enactment of the applicable sections of the Code, in the light of the 1920 ruling (described in the majority opinion) and 38 years of consistent administrative interpretation and practice. As many persons who have paid a similar tax are said to be awaiting the outcome of this cause, a policy question exists as to the advisability of making strike benefits tax free.

This dissent having been predicated on a totally different ground, however, these matters are not reached.