**LINCOLN SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 23923.**

United States Court of Appeals, Ninth Circuit.

Feb. 3, 1970.

Rehearing Denied March 18, 1970.

Adam Y. Bennion (argued), of MacKay McGregor & Bennion, Los Angeles, Cal., for appellant.

David E. Carmack (argued), Atty., Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Dept. of Justice, K. Martin Worthy, Chief Counsel, IRS, Washington, D. C., for appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

We are asked to review a determination by the Tax Court. A deduction of $882,636.86 from Appellant's gross income for 1963 was contested. The Tax Court held that Appellant's payment, made for inclusion in the Secondary Reserve Account of the Federal Savings and Loan Insurance Corporation (FSLIC) resulted in the acquisition of a capital asset rather than constituting an ordinary and necessary business expense deductible in the year paid as contemplated by 26 U.S.C. § 162(a).

Jurisdiction and scope of review are governed by 26 U.S.C. § 7482.

The Tax Court, in its published opinion, Lincoln Savings and Loan Association, Petitioner, v. Commissioner of Internal Revenue, Respondent, Docket No. 325–67, 51 T.C. 82, made a comprehensive and accurate statement of the facts. Also in that opinion, as well as in First Federal Savings and Loan Association of St. Joseph v. United States, 288 F. Supp. 477 (W.D.Mo.1968), and in Washington Federal Savings and Loan Association of Miami Beach v. United States, 304 F.Supp. 1072 (S.D.Fla.1969), we find extensive expositions of the applicable statutes and legislative history. Whatever may be said in favor of the proliferation of the printed legal word which has attended the effort of judicial draftsmen to make each opinion an integrated, comprehensive whole, in this situation, where we are concerned with unique and specialized statutory provisions having a tax impact only on one particular segment of the economy, the savings and loan institutions, we discern no advantage in repeating all the arguments, contentions and responses made by the parties here which have been thoroughly considered in the referenced opinions. Neither is it useful to restate the facts in detail, a statement which required twenty-three typewritten pages of the Tax Court opinion. We are writing with the assumption that the reader is familiar with the opinions to which reference has been made.

The taxpayer here is a state-chartered savings and loan association. The *St. Joseph* and *Miami Beach* opinions, *supra*, concerned federal savings and loan associations. The federal institutions are required by law to insure deposits with FSLIC and so to make the premium payments to the Secondary Reserve. A state-chartered institution is not required by law to insure deposits with FSLIC. In this respect, the cases differ. The Tax Court, however, found as a fact that "in the opinion of its (taxpayer's) management loss of its insured status with the FSLIC would cause a mass withdrawal of savings by its depositors", and quite properly refused to distinguish the

---

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

*St. Joseph* case on account of the difference we have noted. We deem both the *St. Joseph* and *Miami Beach* opinions to be persuasive authority in support of the contentions of this taxpayer and we adopt the cogent arguments in those opinions by reference, without repetition.

 The Tax Court opinion approves Revenue Ruling 66–49 (Internal Revenue Bulletin, C.B. 1966–1, January-June 1966, p. 36). The headnote summarizes the ruling.[1] Such rulings, unlike Treasury Regulations, do not have the force of law and are at most merely persuasive.[2] We think the revenue ruling is wrong.

 The question presented is whether the premium payments under 12 U.S.C. § 1727(d), which the taxpayer made into the Secondary Reserve of FSLIC, were deductible as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). The Tax Court said no, and characterized the expense as a non-deductible capital expenditure. 26 U.S.C. § 262. In doing so, the Court emphasized the way the Secondary Reserve was accounted for and managed by FSLIC. It pointed out that Section 1727(d) payments "are not considered as income by the FSLIC"; are used "only for losses of the corporation * * * to such extent as other accounts * * * are insufficient"; that the Secondary Reserve account is "rather like a capital account"; that the Secondary Reserve is "part of a pool of capital available to the FSLIC * * * in the event of emergency. We think the emphasis upon the treatment of the receipt by the payee, FSLIC, is mistaken and that in determining whether an expense is an ordinary and necessary expense of doing business, the focus should be on the taxpayer and the taxpayer's business, not on what the payee does with the money paid. This is not to say that rights retained by the taxpayer are to be ignored.

 Obviously, the payment made to the Secondary Reserve has hybrid characteristics. If this were not so, there would be no lawsuit. The tax impact of the payment must depend upon whether it is more like a capital investment or a business expense.

In opting for the business expense treatment of this expenditure, we first consider whether the revenue ruling to the contrary is inconsistent with the annual accounting concept of income determination and income tax assessment. We think that it is. The importance of this concept was emphasized in Security Flour Mills Co. v. Comm'r, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944), where the Court said:

"The rationale of the system is this: 'It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the gover-

1. "The additional premium prepayments which an insured savings and loan institution is required to pay to the Federal Savings and Loan Insurance Corporation under the provisions of section 404 of the National Housing Act, as amended, are not deductible when paid and may be deducted only when any possibility of their return is precluded. With respect to an accrual basis institution, earnings on such premiums are not includible in the gross income of that institution until such time as the earnings are no longer available for losses of the FSLIC. With respect to a cash basis institution, earnings on such premiums are includible in the gross income of the institution credited therewith only when such earnings are used to pay its obligations or become available to that institution without substantial restriction or limitation." Internal Revenue Bulletin, C.B. 1966–1, January-June 1966, p. 36.

2. Macey's Jewelry Corp. v. United States, 387 F.2d 70, 72 (5th Cir. 1967); United States v. Bennett, 186 F.2d 407, 410 (5th Cir. 1951); cf. Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944); United States v. Jefferson Co. Bd. of Educ., 372 F.2d 836, 858 (5th Cir. 1966); Tandy Leather Co. v. United States, 347 F.2d 693 (5th Cir. 1965); Norton Mfg. Corp. v. United States, 288 F.Supp. 829, 835 (N.D.Ill.1968); Pauley v. United States, 63 U.S.T.C. para. 9280 (S.D.Cal.1963); Kaiser v. United States, 262 F.2d 367, 370 (7th Cir. 1958), aff'd, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960).

ment, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation.'

"This legal principle has often been stated and applied. The uniform result has been denial both to goverment and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount."

To treat the payments of premiums to the Secondary Reserve as the acquisition of a capital asset is a departure from the basic concept of accounting for receipts and disbursements in the year when made (on cash basis accounting). So, it is not just a matter of choosing one treatment or the other. On the contrary, persuasive reasons should appear to justify the departure.

The Commissioner's ruling also ignores another of the most fundamental concepts of federal income taxation. Both federal income taxation and generally accepted principles of the accounting profession assume that a corporate taxpayer is a "going concern" and will continue indefinitely. Ascertainment of revenue at the end of the accounting period does not hinge upon determination of liquidation value of closing inventories, nor is appreciation or depreciation in value of balance sheet assets considered. This concept is so basic that Congress felt compelled to provide a specific exemption for corporations formed or acquired primarily for liquidation. 26 U.S.C. § 341 (1964). Accordingly, to give consideration to the possibilities of reimbursement because of liquidation or receivership is inconsistent with this principle. The possibility of reimbursement by the taxpayer's voluntary act of termination of coverage is in the same category. The Tax Court found that Appellant's management believed that termination of insurance would cause mass withdrawal

by its depositors and, ultimately, liquidation. The Court also found that all but an insignificant portion of the savings and loan industry thought it necessary to have insurance coverage. Therefore, the practical realties require the conclusion that termination of coverage is not a proper consideration in determining the finality of the disbursement in issue. Termination here is deemed tantamount to liquidation or receivership.

We also believe that the revenue ruling is inconsistent within itself. It declares (1) that the payments to the Secondary Reserve were not deductible until any possibility of their return was precluded; also (2) that earnings on the Secondary Reserve are taxable to the taxpayer only when they become available to it without substantial restriction or are paid out for its benefit. When we consider that under the "claim of right" doctrine, there must be an impossibility of even constructive possession to defeat taxation of income and that a non-contractual obligation of repayment will not defeat it (James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961)) in the context of the "all events" test fixing the accounting period for the allowance of deductions as the one in which all events had occurred which fixed the amount and the fact of the liability (United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926); Dixie Pine Products Co. v. Comm., 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); United States v. Consolidated Edison Co., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 656 (1961)), there is an incongruity in a ruling that the income credited to the Secondary Reserve allocated to the taxpayer was not then taxable because of the restrictions on its use, while at the same time these same restrictions precluded deduction of the premium payments as business expenses. If there were so many restrictions on the funds paid to FSLIC that the income derived therefrom was not even constructively received and was not taxable when credited, *a fortiori* these same restrictions on reimbursement or recapture of

the funds made the payment final and deductible in the year it was made. All events had occurred which fixed the amount and the fact of the liability.

From the point of view of Congressional policy, we should observe that the rule of United States v. Consolidated Edison Co., 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 656 (1961), holding that a contested tax liability paid under protest could be deducted not in the year of payment but only in the year liability became fixed and final has been reversed by Congress. 26 U.S.C. § 461(f).[3] The Senate Report, in explanation of the 1964 amendment, states, in part: "The objective of the reporting of items of income and deduction under the internal revenue laws generally is to realistically and practically match receipts and disbursements attributable to specific taxable years. The internal revenue laws contain a number of adjustments designed to accomplish this result. Your committee believes that allowing the deduction of items in the year paid, even though they are still being contested in the courts or otherwise, more realistically matches these deductions up with the income to which they relate than would the postponement of the deduction, perhaps for several years, until the contest is settled." U.S.Cong. & Admin.News, 88th Cong., 2nd Sess., p. 1773.

This reaffirmation of basic Congressional policy obviously is not specific authority for our particular problem. It, nevertheless, should incline us to recognizing deductions in the year payment is made rather than to postpone them because of contingent and sometimes quite illusory possibilities of recapture.

The payments made by this taxpayer into the Secondary Reserve of FSLIC meet the tests of necessary business expenses. The expense is "appropriate and helpful" for the "development of the taxpayer's business." Commissioner v. Tellier, 383 U.S. 687, 86 S.Ct. 1118, 16 L.Ed. 2d 185 (1966). To say that they are also "ordinary" is to beg the question which faces us inasmuch as "ordinary" is a qualification designed to exclude expenditures "in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset." Commissioner v. Tellier, *supra*. These payments, nevertheless, fullfill our conception of an "ordinary" business expense. It is a recurring annual expense geared primarily to acceleration of the taxpayer's business; that is, the increase in the accounts of the insured members. It is an expense which, from a practical point of view, has to be paid to stay in business. It must be paid regardless of whether income is available for the purpose. The obligation is not associated with an increase of the taxpayer's income. On the contrary, it is generated because of an increase in the taxpayer's liabilities. When these identifying brands are present, it is practical and essential that the character of the expenditure as an ordinary, as well as necessary, business expense be recognized. Otherwise, the impact of the tax may destroy the business.

For the reasons stated, in addition to those articulated in the *St. Joseph* and *Miami Beach* cases, *supra*, we deem Revenue Ruling 66–49 to be unreasonable. The decision of the Tax Court is reversed.

HUFSTEDLER, Circuit Judge:

I respectfully dissent. There is nothing in the record to support the majority's statement that the payments are a "recurring annual expense." To the con-

3. "(f) Contested liabilities.—If—
 "(1) the taxpayer contests an asserted liability,
 "(2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
 "(3) the contest with respect to the asserted liability exists after the time of the transfer, and

 "(4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year),
 "then the deduction shall be allowed for the taxable year of the transfer." 26 U.S.C. § 461(f).

trary, the Tax Court found that in all likelihood the section 1727(d) payments would be required for a duration of only a few years (until approximately 1971) and that thereafter the suspension provisions of 1727(g) would be in effect. The taxpayer's prorata share of the Secondary Reserve would then be used to discharge its premium obligations under section 1727(b). "[F]or all practical purposes, [the section 1727(d)] payments will definitely be used to discharge the obligation of the insured institution to pay regular annual premiums in future years, assuming it has not previously transferred its pro rata share of the Secondary Reserve or received a cash payment in respect thereof from the FSLIC." (51 T.C. at 102.)

For this and the other reasons expressed by the unanimous Tax Court, I would affirm on the ground that the payments are "in the nature of a prepayment with respect to future premiums," and are not therefore deductible as an ordinary and necessary business expense in the year made.