**Vance and Virginia JOVICK**

v.

**The UNITED STATES.**

**No. 149–72.**

United States Court of Claims.

June 20, 1973.

Gene W. Reardon, Denver, Colo., atty. of record, for plaintiff. Reardon, Reardon & Reardon, Denver, Colo., of counsel.

Richard D. Silvester, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Gilbert E. Andrews Jr., and Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

COWEN, Chief Judge.

▮ In this suit for refund of Fereral income taxes, plaintiffs claim that Section 105(d) [1] of the Internal Revenue Code of 1954 entitles them to a sick pay-disability exclusion against the disability retirement income reported on their joint returns for 1967 through 1969. For the reasons hereinafter stated, we hold that plaintiffs are entitled to the exclusion.

The material facts are not in dispute. Plaintiff Vance Jovick was a member of the United States Civil Service Retirement System while employed with the Central Intelligence Agency (hereinafter referred to as the CIA). On December 31, 1959, Mr. Jovick retired from the CIA on a disability pension. At the time, his age was 54 and he had achieved 28½ years of creditable Feder-

---

[1]. Section 105(d) reads in pertinent part:
"§ 105  *Amounts received under accident and health plans*
 \*      \*      \*      \*      \*
  (d) [as amended by Sec. 205(a), Revenue Act of 1964, P.L. 88–272, 78 Stat. 19].
*Wage continuation plans.*—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100.
 \*   \*   \* ”

al service. In each of the years in suit, Mr. Jovick received disability income in excess of $5,200, which would be the maximum income exclusion a taxpayer might receive under § 105(d).

Plaintiffs filed amended joint returns for each of the years in suit claiming $5,200 sick pay exclusion in each of the several years. The IRS tax auditor allowed a partial sick pay exclusion for 1967 based on the assumption that Mr. Jovick *could have* retired when he reached age 62 in 1967.[2] No sick pay exclusion was allowed for 1968 and 1969. The Government now contends that the tax auditor was incorrect in allowing a partial exclusion in 1967 and that in truth the taxpayer *could have* retired in 1965 when he was 60 years old and had 30 years' service.[3]

Plaintiffs contend that none of these dates can be correct for it is speculation whether Mr. Jovick would have retired before the statutory retirement age of 70.[4]

The Government's argument is posited on Treasury Regulation § 1.105–4(a)(3)(i)(*a*) which states in pertinent part:

> Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension or annuity as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age as defined in (*b*) of this subdivision, but section 105(d) does not apply to the payments which such an employee receives after he reaches such retirement age. * * *

For a definition of retirement age, one is referred to Treasury Regulation § 1.-79–2(b)(3)(i)(a)(1) and (2).[5] In the instant case, plaintiff's retirement age under the regulation would be the earliest age that he could have retired under the law (age 60 with 30 years' service). For the purposes of this case, we shall call this his optional retirement age.

We would be inclined to delve into the history of this regulatory provision were it not that the Sixth Circuit recently declared the regulation invalid on the ground that it deprives a taxpayer of a benefit conferred by statute. Brooks v. United States, 473 F.2d 829 (6th Cir. 1973).

The regulation upon which defendant relies (Reg. 1.79–2(b)(3)) resulted from an amendment made in 1966 and was first struck down in Walsh v. United States, 322 F.Supp. 613 (E.D.N.Y.1970), as an unauthorized restriction on a statutory benefit. Walsh was followed in

---

2. In addition, the auditor computed an exclusion based on the return of taxpayer's contributions to the Civil Service Retirement Fund. However, the return on contributions to the retirement fund are not in issue in this case.

3. *See* Act of July 31, 1956, ch. 804 § 401, 70 Stat. 736. This was the law in effect on April 2, 1965, the day Mr. Jovick reached age 60. In 1966, this law was amended and codified. *See* 5 U.S.C. § 8336.

4. *See* Act of July 31, 1956, ch. 804 § 401, 70 Stat. 736, now amended and codified in 5 U.S.C. § 8335.

5. Regulation § 1.79–2(b)(3)(i)(a)(1) and (2):

"(1) The earliest age indicated by such plan at which an active employee has the right (or an inactive individual would have the right had he continued ·in employment) to retire without disability and without the consent of his employer and receive immediate retirement benefits computed at either the full rate or a rate proportionate to completed service as set forth in the normal retirement formula of the plan, i. e., without actuarial or similar reduction because of retirement before some later specified age, or.

"(2) The age at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which he last belonged."

Brooks v. United States, 339 F.Supp. 1031 (M.D.Tenn.1971), which was affirmed by the Sixth Circuit on February 8, 1973.

Brooks was a career employee with the duPont Corporation. He was retired for disability after 37 years of service and 60 years of age. At age 60, he was also qualified for optional longevity retirement. Mandatory retirement was at age 65. In commenting on the Government's application of Treasury Regulations §§ 1.105–4(a)(3) and 1.79–2(b)(3), the court held that Brooks was absent from work because of sickness within the meaning of section 105(d) of the Code. The court went on to state:

> While it cannot be doubted that income received after the mandatory age will be taxable regardless of whether the pension began as a disability pension, we hold that the Government's position, as outlined in the regulation, is untenable. The statute is clear and unambiguous in providing for an exclusion of payments made to any employee for a period of absence from work caused by illness. The money that this taxpayer receives between the age of 60, when he was forced to retire by illness, and 65, when he would have to retire whether or not healthy, is received because of his absence from work because of illness. [Brooks v. United States, 473 F.2d at 831 (6th Cir. 1973).]

We agree with the Sixth Circuit's holding and its interpretation of the applicable statute. An employee who absents himself from work because of retirement for disability prior to his mandatory retirement age is, we think, one of the class of individuals intended to be benefited by the statute.

Finding itself without support in the case law, defendant advances an additional argument in the instant case on a ground not considered in *Brooks*. The defendant contends that a CIA regulation [6] would have required plain-

---

6. The personnel regulation reads as follows:
"44. RETIREMENT
a. GENERAL
(1) Staff employees, staff agents (including military staff agents), excluding only those receiving temporary appointments, participate in the Civil Service Retirement System. Certain temporary employees who participated in the system immediately prior to their temporary employment with the Agency retain their coverage under the Civil Service Retirement Act, as amended.
(2) Career agents may be granted retirement benefits. Contract personnel who participated in the system immediately prior to their employment under contract without a break in service of more than 3 days continue to participate in the system.
(3) The amount of retirement benefits, insofar as Agency employment is concerned, is based on Agency salary. Retirement deductions for integrees, except military staff agents, will be made by the integrating agency on the basis of the individual's integrated salary with subsequent adjustment in accordance with the provisions of R 20–605. Section V, Settlement of Compensation Differences.
b. POLICY. The Agency encourages employees to retire voluntarily as soon as they are eligible to do so under the Civil Service Retirement System. Employees are, therefore, expected to plan to retire upon completing 30 years' service at the age of 60, or after five or more years of service at the age of 62, except when requested by the Agency to remain in service.
c. RETIREMENT BOARD. The CIA Retirement Board is established to ensure uniform application of the retirement policy in subparagraph b above, and in cases of unusual circumstances to act on appeals connected therewith. The board is composed of three members appointed by the Director of Central Intelligence. The Office of Personnel provides administrative support to the board.
d. DEPUTY DIRECTORS. Deputy Directors shall determine for individual employees under their jurisdiction whether or not it is desirable, because of skills or other qualifications which are needed and should be preserved for the Agency to retain them beyond the normal retirement date established by Agency policy. They shall ensure that supervisors discuss retirement plans with employees two years before the projected retirement date and shall review each case annually thereafter.
e. OFFICE OF PERSONNEL. The Office of Personnel provides staff guidance, administrative support, and counseling services in connection with the Civil Serv-

tiff to retire at age 60. With respect to this regulation, we note, first, that it does not purport to abrogate the provisions of the statute relating to the mandatory age for the retirement of civil service employees generally. Instead, it is a statement of a general policy that CIA employees are expected to plan to retire after completing 30 years of service at age 60, but it also makes provision for the retention of those who are asked to remain.

In support of its contention, defendant has submitted an affidavit by the Director of Personnel of CIA that there was nothing in Mr. Jovick's file at the time of his disability retirement (at age 54 on December 31, 1959) to indicate that he would have been asked to continue service in the Agency after he reached the age of 60 on April 2, 1965. We think this affidavit does not aid defendant. Under the provisions of the regulation, Mr. Jovick's supervisors would not have been required to discuss retirement plans with him until April 2, 1963, two years before he would have attained age 60. It is therefore extremely unlikely that in 1959, there would have been any papers in the file to indicate that he would or would not have been requested to continue his employment in the CIA after he became 60 years of age. As against this affidavit, we have plaintiff's positive affidavit that had it not been for his disability retirement, he would not have retired prior to attaining

70 years of age because of his financial needs and family circumstances. In view of all these circumstances, including the provisions of the CIA regulation, it would take a great deal of speculation to find that Mr. Jovick would have been requested to retire from his position in the CIA when he became 60 years of age and that he would have ended his employment in the Government at that time.

In attempting to bolster its argument that the CIA regulation requires the employees of that Agency to retire at age 60 after 30 years of service and that the regulation is valid, defendant relies on the special statutory exception to the normal procedure for the removal of civil service employees. This special statute, 50 U.S.C. § 403(c), provides that notwithstanding the provisions of any other law, the Director of Central Intelligence may "in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States, * * *." We find this argument unpersuasive and hold that this statutory exception does not change the mandatory retirement age, because the statute specifically provides that "such termination shall not affect the right of such officer or employee to seek or accept employment in any other department or agency of the Government if declared eligible for such employment by the United

ice Retirement System. The Office of Personnel shall:
(1) Inform employees five years before their eligibility for retirement of the Agency's retirement policy and the various benefits and services available to them, at the same time providing the names of these employees to the appropriate Deputy Directors.
(2) Conduct a preretirement counseling program for Agency presonnel which will:
(a) Provide the opportunity for employees to obtain advice and counsel regarding personal problems, accrued benefits, privileges, and obligations pertaining to retirement.
(b) Assist employees as retirement approaches, in developing both preretirement and postretirement plans.

(3) Process applications in connection with civil service retirement for Agency personnel, including applications requiring secure processing and applications for refunds requiring internal processing.
(4) Make available within the Agency general information concerning retirement and furnish specific information as requested. For security reasons, Agency personnel will be expected not to contact the Civil Service Commission directly.
f. THE COMPTROLLER. The Comptroller maintains records of and withholds retirement deductions, and makes payment of direct refunds as authorized by the Director of Personnel."

States Civil Service Commission." Thus, if we assume that Mr. Jovick might have been requested to retire from the CIA when he became 60 years of age, we can also assume that he would have been employed in some other department or agency of the Government and have continued in that employment until he attained the age of 70.

However, speculation as to these several possibilities provides little help in resolving the principal issue before us. That issue is the validity of the regulation relied upon by the Government. As previously stated, we have concluded that it is invalid and ineffective to "deprive a taxpayer of a benefit conferred by statute." Brooks v. United States, *supra.*

Plaintiffs' motion for summary judgment is granted; defendant's cross motion is denied; and judgment is entered for plaintiffs with the case remanded to the trial division to determine the amount of the recovery in accordance with Rule 131(c).