WILLIAM W. BROWNHOLTZ AND ANNA M. BROWNHOLTZ, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2443-77.    Filed December 4, 1978.

William W. Brownholtz and Anna M. Brownholtz, pro se. *Carolyn M. Parr,* for the respondent.

RAUM, *Judge:* The Commissioner determined a deficiency in petitioners' 1973 Federal income taxes in the amount of $1,520.40. Petitioners received U.S. Civil Service disability retirement annuity payments during 1973. The only issue to be

---

decided is whether petitioners may exclude from gross income a portion of the payments as sick pay under section 105(d),[1] while excluding the remainder in the same year under section 72(d) as tax-free recovery of the retired employee's contribution to the Civil Service Retirement System.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners William W. Brownholtz and Anna M. Brownholtz, husband and wife, resided in Silver Spring, Md., at the time the petition in this case was filed. Their 1973 joint income tax return was filed with the Director of the Baltimore District, Internal Revenue Service. Anna M. Brownholtz is a party to this suit solely by virtue of having filed a joint return with her husband. Accordingly, William W. Brownholtz will hereinafter be referred to as petitioner.

Petitioner retired from the U.S. Public Health Service, Department of Health, Education, and Welfare, on March 31, 1972, after 37½ years of service. He retired on longevity at the age of 57, although he had been disabled since 1966.

On April 27, 1973, the United States Civil Service Commission approved petitioner's application to have his retirement status changed to disability retirement, retroactive to April 1, 1972. No change in petitioner's retirement annuity rate resulted from the action taken by the Civil Service Commission.

In 1972, petitioner received retirement payments totaling $8,114 from the U.S. Civil Service Retirement System. He excluded all of these payments from his 1972 income under section 72(d),[2] as partial recovery of his contribution to the retirement system. Petitioner's total contribution to the Civil Service Retirement System was $22,053. Since petitioner recovered $8,114 of his contribution in 1972, the sum of $13,939 remained to be recovered tax-free under section 72(d) in 1973 and future years.

In 1973, the year in issue, petitioner received Civil Service

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue.

[2]See n. 5 *infra.*

retirement payments of $18,801. On his 1973 return, petitioner excluded from income the first $5,200 received under section 105(d),[3] as "sick pay," and the remaining $13,601 under section 72(d), as further partial recovery of his contribution to the retirement system. The Commissioner took the position that petitioner could not exclude sick pay and receive the benefits of section 72(d) in the same year. He allowed the greater of the two amounts actually excluded on petitioner's original return—the $13,601 excluded under section 72(d)—and disallowed the amount claimed as sick pay. Petitioner's taxable income was thereby increased by $5,200.

## OPINION

The sole issue is whether petitioner is entitled to avail himself in the same year of exclusions from income for both sick pay under section 105(d)[4] and for recovery of his contribution to the U.S. Civil Service Retirement System under section 72(d).[5] We hold that petitioner is not entitled to both exclusions, and uphold the Commissioner's disallowance of the smaller of the two, namely, the $5,200 sick pay exclusion claimed by petitioner in 1973.

The Commissioner's determination was made on the basis of section 1.72–15(i), Income Tax Regs., which provides, in part, as follows:

(i) *Special rules—*(1) *Special rule for taxable years ending before January 27, 1975.* A taxpayer who has reached retirement age, as defined in sec. 1.79–2(b)(3) (hereinafter referred to as "initial retirement age"), before January 27, 1975, and who has received payments under a plan described in paragraph (a) of this section, which are wage continuation benefits to which section 105(d) and this section apply, or which are treated as such by reason of the employee having so agreed under sec. 1.105–6, *shall be entitled to an exclusion, in taxable*

---

[3] See n. 4 *infra.*

[4] Sec. 105(d) provided in part, for the year at issue, that gross income does not include amounts (within certain dollar limitations) that are "wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness." Up to $100 per week ($5,200 per annum) may be excluded under sec. 105(d). This $5,200 annual exclusion is known as the "sick pay" exclusion. Sec. 105(d) has been substantially altered by the Tax Reform Act of 1976 for years subsequent to the year in issue.

[5] Sec. 72(d) provides, in general, that where an employee's contribution to a retirement annuity plan is fully recoverable within 3 years from receipt of the first payment, all amounts received under the annuity plan shall be excluded from gross income until the employee's contribution has been recovered. Where the period exceeds 3 years, sec. 72(b) provides for an annual exclusion determined by a ratio computed on the basis of the employee's investment in the annuity and his total expected return.

*years ending before January 27, 1975,* with respect to payments received after initial retirement age but before mandatory retirement age, as defined in sec. 1.105–4(a)(3)(i)(B), *which is the greater of:*

(i) the amount actually excluded on an original return under section 72(b) or (d) with respect to payments received after initial retirement age, to the extent such amount does not exceed an amount properly excludable under section 72(b) or (d) if this paragraph and paragraph (b) of this section did not apply; *or*

(ii) the amount that would have been properly excludable under section 105(d) during the same period.

[Emphasis added.]

Petitioner received disability retirement payments in 1973 from the Federal Civil Service Retirement System at a time when he had not yet attained mandatory retirement age. His disability payments accordingly qualify as wage continuation payments (sick pay) under section 105(d). *DePaolis v. Commissioner,* 69 T.C. 283, 286–287. It is undisputed that the payments satisfy the other requirements set forth in section 1.72–15(i)(1), Income Tax Regs. The "special rule" provided in that regulation applies by its terms to this case.

Section 1.72–15(i), Income Tax Regs., *supra,* allows petitioner to exclude from income *the greater of* the amount actually excluded on his original 1973 return as recovery of his contribution to the retirement plan, *or* the maximum permissible sick pay exclusion. He cannot exclude both amounts. The Commissioner properly disallowed the $5,200 claimed sick pay exclusion under the regulation.

Petitioner attempts to avoid the applicability of the regulation by arguing that it is invalid. However, even if we were to agree with petitioner in this respect, he could not prevail.

In *DePaolis v. Commissioner,* 69 T.C. 283, an opinion reviewed by the full Court, we considered the interrelationship of sections 72(d) and 105(d) as applied to Civil Service disability and retirement payments. One of the matters considered in *DePaolis* was whether both sections could apply to a disability retirement annuity in the same year. Neither the Commissioner nor the Court relied on the regulation here challenged. We held that disability retirement payments may not be "fractured into part 'payments in lieu of wages' [sick pay] and part 'retirement income' [subject to tax-free recovery of cost under section 72(d)]." 69 T.C. at 287. Furthermore, we concluded that section 105, and not section 72, applies to Civil Service disability retirement payments received before mandatory retirement age.

The holding in *DePaolis* was consistent with the "general rule" set forth in section 1.72–15(b) and (d), Income Tax Regs.[6] The "general rule" provides that disability payments in part qualifying for the sick pay exclusion are excludable only to the extent of the $5,200 per annum maximum allowed by section 105(d), and that payments in excess of that amount are fully taxable under section 105(a) and *not* excludable under section 72. It should be noted that these two paragraphs of the regulations (sec. 1.72–15(b) and (d), Income Tax Regs.) were adopted in 1960 (see T.D. 6485, 1960–2 C.B. 28), long before promulgation of the challenged paragraph (sec. 1.72–15(i), Income Tax Regs.) in 1975 (T.D. 7352, 1975–1 C.B. 34).

Petitioner's attack on the validity of section 1.72–15(i), Income Tax Regs., is misguided. Without the "special rule" provided by paragraph (i), the preexisting "general rule" would control. Under the "general rule," petitioner would be allowed only the $5,200 maximum annual sick pay exclusion, and the $13,601 excluded on his 1973 return as recovery of plan contributions would be disallowed.[7] This would result in an even greater deficiency than that asserted by the Commissioner. We would thus be unable to render judgment for petitioner regardless of the validity of the "special rule" of section 1.72–15(i), Income Tax Regs., for, if it were invalid we would be left with the "general rule" of section 1.72–15(b) and (d), Income Tax Regs., which is even more disadvantageous to petitioner.

---

[6]Sec. 1.72–15, Income Tax Regs.:

(b) *General rule.* Section 72 does not apply to any amount received as an accident or health benefit, and the tax treatment of any such amount shall be determined under sections 104 and 105. See paragraphs (c) and (d) of this section * * * . Section 72 * * * does apply to any amount which is received under a plan to which this section applies and which is not an accident or health benefit. * * *

\* \* \* \* \* \* \*

(d) *Accident or health benefits attributable to employer contributions.* Any amounts received as accident or health benefits and not attributable to contributions of the employee are includible in gross income except to the extent that such amounts are excludable from gross income under section 105(b), (c), or (d) and the regulations thereunder. Thus, such amounts may be excludable under section 105(d) as payments under a wage continuation plan. *However, if such payments, when added to other such payments attributable to employer contributions, exceed the limitations of section 105(d), then the excess is includible in gross income under section 105(a). Such excess is not excludable under section 72.* See, however, paragraph (i) of this section, for special rules for taxable years ending before January 27, 1975, relating to certain accident or health benefits which were treated as distributions to which section 72 applied. [Emphasis added.]

[7]According to the petitioner, this result was tentatively proposed during audit of petitioner's return at a time before sec. 1.72–15(i), Income Tax Regs., was promulgated. After the adoption of paragraph (i), petitioner was allowed the more liberal exclusion provided therein.

Petitioner does not specifically challenge the validity of the general rule set forth in section 1.72–15(b) and (d), Income Tax Regs., nor does he discuss those paragraphs on brief. In any event, we think that those paragraphs are permissible interpretations of sections 72 and 105. Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes," and "should not be overruled except for weighty reasons." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501.

We think that the "general rule" expressed in the regulations is consistent with the policies behind sections 72 and 105. Section 105(a) is intended to tax an employee on wage continuation benefits provided by untaxed employer contributions when received during a period of absence from work due to sickness, subject to the limited sick pay exclusion exception. See Conf. Rept. 2543, 83d Cong., 2d Sess. 24–25 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 183–184 (1954). If section 72 were to apply in a case such as this, the very amounts that section 105(a) seeks to tax could be treated as recovery of cost, and thus escape taxation. To resolve this conflict between sections 72 and 105, it seems reasonable to construe section 105, specifically directed to the taxation of sick pay, as superseding the general provisions of section 72, which do not expressly address that problem.[8]

Furthermore, the Tax Reform Act of 1976, sec. 505(d), 90 Stat. 1568, as amended by the Tax Reduction and Simplification Act of 1977, sec. 301(b), 91 Stat. 151, provides that a disability retiree, like petitioner, who retired prior to January 1, 1977, and who was eligible for the sick pay exclusion as it existed prior to the Tax Reform Act of 1976, may not treat disability payments as payments received as an annuity under section 72, unless he irrevocably elects to waive the benefits of the sick pay exclusion. Thus, Congress has recognized the general rule expressed by the section 72 regulations that a retiree may not exclude both sick

---

[8]The general rule stated in sec. 1.72–15(b) and (d), Income Tax Regs., is not inconsistent with *Reardon v. United States*, 491 F.2d 822 (10th Cir.), and cases cited therein. *Reardon* invalidated regulations prohibiting taxpayers, like petitioner, who had reached minimum initial retirement age but not mandatory retirement age, from excluding sick pay. There was no issue in any of the cases cited by petitioner concerning availability of a sec. 72 exclusion *in addition* to the limited sick pay exclusion. See, e.g., *Jovick v. United States*, 492 F.2d 1215, 1216 n. 2 (Ct. Cl.).

Moreover, the result required by the general rule would not necessarily deprive the taxpayer of the benefits of sec. 72 in the long run, since his unrecovered cost would still remain available to be received tax free upon his reaching mandatory retirement age.

pay and recovery of his contributions to the retirement plan in the same year. Although Congress apparently did not intend section 505 of the Tax Reform Act of 1976 to have retroactive effect during the years here at issue, see, e.g., Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976, p. 129, 1976–3 C.B. (Vol. 2) 1, 141, its action serves to reinforce our conclusion in this case. Cf. *Knetsch v. United States*, 364 U.S. 361, 367–369.

Petitioner next argues that the rules forbidding him from excluding both sick pay and recovery of his cost in 1973 are invalid because, in certain hypothetical circumstances, they may have the effect of preventing tax-free recovery of his contributions to the annuity plan. We think this is not sufficient reason to invalidate any of the section 72 regulations.

It has been held that a tax deduction is not necessarily available for a loss suffered by an annuitant who dies before fully recovering his investment in an annuity contract. See, e.g., *Industrial Trust Co. v. Broderick*, 94 F.2d 927 (1st Cir.), certiorari denied 304 U.S. 572; *White v. United States*, an unreported case (N.D. Tex., 19 AFTR 2d 658, 67–1 USTC par. 9230); 5 J. Mertens, Law of Federal Income Taxation, sec. 28.34, p. 131 and n. 55 (1975). See also 1 J. Mertens, *supra*, section 6A.05 at p. 18. In such cases, although the annuity may have been purchased with previously taxed funds, there is no recovery of the annuitant's investment for tax purposes. Petitioner's argument that the Internal Revenue Code requires such tax-free recovery is therefore in error, and is no basis for declaring any section 72 regulation invalid.

Petitioner makes various constitutional arguments against the result reached by the Commissioner, all of which are unpersuasive. Petitioner contends that retroactive application of section 1.72–15(i), Income Tax Regs., to his case is unconstitutional. This argument is wholly without merit. Since paragraph (i) is more liberal than the preexisting "general rule" applicable before paragraph (i) was adopted, he suffered no harm from the retroactive application of the regulation to his case. In fact, he realized a benefit. There is no constitutional violation.

Petitioner further argues that he was denied equal protection under the law because the Commissioner allowed an unnamed friend to exclude both sick pay and recovery of employee's contributions to the Civil Service Retirement System in the same

year. Petitioner's testimony was not sufficiently specific for us to conclude that the circumstances of his case and those of his friend were similar. Accordingly, he has failed to prove any alleged discrimination. In any event, however, the mere fact that his friend may have had a windfall does not entitle petitioner to like treatment. Cf. *Lincoln Savings & Loan Association v. Commissioner*, 51 T.C. 82, 107, reversed 422 F.2d 90 (9th Cir.), which was in turn reversed 403 U.S. 345; *Tollefsen v. Commissioner*, 52 T.C. 671, 681, affirmed 431 F.2d 511 (2d Cir.), certiorari denied 401 U.S. 908.

The conceptual difficulties presented by this case arise from the effort to give an expansive reading to the statute in favor of the disabled employee. Thus, section 105(d), in providing for the sick pay exclusion deals with "wages or payments in lieu of wages for a period during which the employee is absent from work on account of * * * sickness." The provision plainly does not contemplate the situation of a retired employee but rather one where payments are received during a temporary period of illness prior to the employee's return to work. Yet, it has been stretched to cover payments to an employee prematurely retired by reason of permanent disability for the period prior to the time of his mandatory retirement, the theory being that under a hospitable construction of section 105(d) such payments could be treated as having been received under a "wage continuation" plan up to the time of mandatory retirement. See, e.g., *Reardon v. United States*, 491 F.2d 822 (10th Cir.). But if that is the theory permitting the section 105(d) exclusion, it would be inconsistent with allowing any exclusion under section 72(d), which is constructed primarily on the assumption that the payments involved are being received under a retirement pension system or other plan providing post-employment benefits, and not as wages or in lieu of wages. See *Jones v. Commissioner*, 71 T.C. 128 (1978); cf. H. Rept. 1337, 83d Cong., 2d Sess. 10 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 11 (1954). Thus, in granting the employee the option of taking the greater of the section 105(d) exclusion or the section 72(d) benefit, the Treasury regulation applied here (sec. 1.72–15(i), Income Tax Regs.), has stretched the statute even further, permitting the employee to treat the payments received as either sick pay or as retirement benefits, whichever yields the more favorable result to him. However, petitioner asks for an even more favorable result, namely, the

treatment of the payments in any given year *both* as wages and as a retirement annuity, classifying some of them or portions of some of them as sick pay and the remainder as retirement benefits. This, in our judgment, would stretch the statute beyond the breaking point. In the absence of some indication of congressional intention to sanction such result, we cannot believe that the statute was ever intended to permit the employee to have it both ways in the same taxable year.

We have considered the other arguments made by petitioner, and find them to be without merit. Accordingly,

*Decision will be entered for the respondent.*

___

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise stated.