MARGARET G. HAYE and ELBERT L. HAYE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haye v. Commissioner
Docket No. 24885-81
United States Tax Court
T.C. Memo 1983-463; 1983 Tax Ct. Memo LEXIS 326; 46 T.C.M. (CCH) 980; T.C.M. (RIA) 83463; August 9, 1983. *326 Petitioner-husband retired from the Federal Communications Commission in 1971 because of high blood pressure and heart problems. Thereafter he received disability pay from the Civil Service Retirement and Disability Fund. Held: Petitioners are not entitled to exclude from income any portion of petitioner-husband's 1978 disability pay under section 105(d), I.R.C. 1954, under the "grandfather clause" enacted by the Congress, or under any implied or inherent "Grandfather Rights". Elbert L. Haye, pro se. Doreen M. Susi, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1978 in the amount of $757. After a concession by each side, the issue for decision is whether disability pay received by petitioner-husband in 1978 is includible in gross income under section 105(a), [1] or is excludable because of section 105(d). This case has been submitted fully stipulated; the stipulations and the stipulated exhibits are incorporated herein by *328 this reference. When the petition in this case was filed, petitioners Margaret G. Haye and Elbert L. Haye (hereinafter sometimes referred to as "Haye"), wife and husband, resided in Buckeye, Arizona. Haye was born on August 13, 1913. He worked for the Federal government under the Federal Civil Service Retirement System for about ten years. Pursuant to information and diagnosis of his doctor that Haye had high blood pressure and heart problems, so as to make him physically unable to continue in his job assignment, in 1971 his employer, the Federal Communications Commission, insisted that Haye retire. In July 1971, Haye retired on "100% disability" under the standards of the Federal Communications Commission. When Haye retired (see n. 4, infra), he received a document from the United States Civil Service Commission entitled "FEDERAL INCOME TAX INFORMATION FOR DISABILITY ANNUITANTS", which states in part as follows: The Internal Revenue Service holds that persons retiring for disability may claim a sick pay exclusion on their Federal income tax returns only until they reach the earliest age ("normal retirement date") at which they could have retired voluntarily without *329 reduction for early retirement. ("Normal retirement dates" for Federal civil service retirees are shown on the other side of this notice.) Decisions in the 3rd, 6th and, most recently, 10th Federal Circuit Courts of Appeals, now have held that the disability retirees involved in those decisions may claim the sick pay exclusion until they reach mandatory retirement age. This is age 70 under the Federal Civil Service Retirement System. We understand that the Internal Revenue Service is reevaluating its rule on "normal retirement date" as a result of these court decisions. Meanwhile, any taxpayer desiring to take protective measures in case the current IRS rule changes, may file claims for refund (IRS Form 843) claiming the sick pay exclusion for all open years. * * * Haye contributed a total of $4,046 of his own funds to the Civil Service Retirement and Disability Fund. As a consequence of his retirement from the Federal Communications Commission, Haye received disability pay in the amounts of $3,866 and $4,131 for 1977 and 1978, respectively. On their joint income tax return for 1978, petitioners did not report any of the $4,131 received as disability pay by Haye. *330 Respondent contends that the disability pay received by Haye in 1978 is includible in income under section 105(a), because the requirements for exclusion under section 105(d) have not been met. Petitioners contend to the contrary on the basis that they "should come under a 'Grandfather Right'" exception, especially "where a covenent [sic] with the Federal Government is implied and accepted in good faith." We agree with respondent. Under section 105(a), [2] employer-provided accident or health insurance benefits received by an employee generally are to be included in gross incme. However, before its amendment by the Tax Reform Act of 1976, section 105(d) provided a limited exclusion for wage continuation plans. Respondent does not dispute petitioners' exclusions under section 105(d) as to years before 1977. *331 By the Tax Reform Act of 1976 (Pub. L. 94-455, 90 Stat. 1520, 1566), the Congress revised section 105(d), narrowing the exclusion so as to make it available only if the taxpayer had not yet attained age 65, was retired on disability, we permanently and totally disabled, and met certain other requirements. After modification by the Tax Reduction and Simplification Act of 1977 (Pub. L. 95-30, 91 Stat. 126, 151), the 1976 Act rule was made to apply to taxable years beginning after December 31, 1976. A transitional rule provided some relief to those who had retired before January 1, 1977. (As if to underline the unprofitability of detailed descriptions of the law in this area, within days after the instant case was submitted, section 105(d) was repealed by section 122(b) of the Social Security Amendments of 1983 (Pub. L. 98-21, 97 Stat. 65, 87).) Petitioners do not contend that Haye was totally and permanently disabled, in effect conceding that neither the language of section 105(d) (as in effect for 1978) nor the transition rule provides the tax benefits they seek for 1978. See Haar v. Commissioner,78 T.C. 864, 868-869 (1982), affd. 709 F.2d 1209 (CA8 1983); *332 Pearson v. Commissioner,76 T.C. 701 (1981). We conclude that section 105(d) does not entitle petitioners to exclude from income disability pay Haye received in 1978. Petitioners contend that they have "Grandfather Rights" [3] of which Congress did not intend to deprive them. As we carefully explained in Pearson v. Commissioner,76 T.C. at 704-706, the Congress intended the 1976 Act changes to apply "regardless of when the person retired." As to the Congress' power to establish uniform effective dates both when the law is made more generous and when it is made more onerous, see United States v. Maryland Savings-Share Ins. Corp.,400 U.S. 4 (1970), and United States v. Darusmont,449 U.S. 292 (1981). There are no inherent "Grandfather Rights" which would enlarge the extent of exclusion that the Congress prescribed. *333 Second, petitioners contend that on retirement Haye was told "that no income tax could or would be levied against [Haye's] retirement prior to the mandatory retirement age of 70", and that this statement and the form letter quoted from supra, created an implied covenant with the Federal government which Haye accepted. [4] Neither the letter nor anything said to Haye alters the wording of the statute or the transitional rule. Also, neither would estop the respondent as to application of section 105(d) in the instant case. See Zuanich v. Commissioner,77 T.C. 428, 431-433 (1981), on appeal (CA9, Nov. 13, 1981); Graff v. Commissioner,74 T.C. 743, 760-765 (1980), affd. 673 F.2d 784 (CA5 1982). Third, petitioners cite opinions of a number of Courts of Appeals, and contend that "[t]his leaves a definite gray area" in the *334 law. These opinions predate the amendment of section 105(d) by the Tax Reform Act of 1976. We do not see any such "gray area" left in the statute as applicable to petitioners. We hold for respondent. Because of respondent's concession that petitioners are entitled under section 72(d) to exclude from income $180 of the disability pay Haye received in 1978, [5]
*335 Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions.--Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.↩
3. Petitioners assert "that 'Grandfather Rights' is a product of Americas [sic] basic belief that all men are created free and equal and is therefore a manifestation of Democracy at its finest." We draw petitioners' attention to the following description in Congressional Research Service of the Library of Congress, The Constitution of the United States of America: Analysis and Interpretation, S. Doc. 92-82, pp. 1542-1543 (1973): Grandfather Clauses.--Until quite recently, the history of the Fifteenth Amendment has been largely a record of belated judicial condemnation of various state efforts to disenfranchise Negroes either overtly through statutory enactment or covertly through inequitable administration of electoral laws and toleration of discriminatory membership practices of political parties. Of several devices which have been voided, one of the first to be held unconstitutional was the "grandfather clause." Beginning in 1895, several States enacted temporary laws whereby persons who had been voters, or descendants of those who had been voters, on January 1, 1867, could be registered notwithstanding their inability to meet any literacy requirement. Unable because of the date to avail themselves of the exemption, Negroes were disabled to vote on grounds of illiteracy or through discriminatory administration of literacy tests while illiterate whites were permitted to register without taking any tests. The Supreme Court struck down such grandfather clauses in Guinn v. United States,238 U.S. 347 (1915), and Lane v. Wilson,307 U.S. 268 (1939). Thus, a reading of history antedating our present internal revenue laws shows that "grandfather rights", or "grandfather clauses", are devices to prevent equal treatment under law and, in certain contexts, may be unconstitutional. Whatever may be the wisdom of the particular grandfather clause that petitioners wish the Congress would have enacted, the general concept is hardly "a manifestation of Democracy at its finest."↩
4. The parties have stipulated that this was a letter to Haye "upon his separation from the government" and that Haye retired in July 1971. Neither the fully stipulated record nor the parties' memorandum briefs explain the printed "March 1974" which appears in the lower right-hand corner of the letter.↩
5. The disability pay which we hold is not excludable under section 105(d) is, under section 402(a)(1), taxable to Haye in accordance with the rules of section 72. Under section 72(d), the disability pay is excludable from income until Haye has recovered his contributions. However, Haye does not use up his section 72(d) exclusion for those years as to which he excludes amounts under section 105(d). (See Brownholtz v. Commissioner,71 T.C. 332 (1978), for a discussion of the interrelationship between the sec. 72(d) exclusion and the sec. 105(d) exclusion.) Accordingly, Haye's pre-1977 exclusions under section 105(d) left him with a potential section 72(d) exclusion of $4,046 (the amount of his contributions to the Civil Service Retirement and Disability Fund). For 1977, petitioners were no longer entitled to exclude under section 105(d)↩ and so the $3,866 Haye received in 1977 was excludable under section 72(d). This leaves Haye with $180 of contributions excludable for 1978 under section 72(d) ($4,046 total contributions, less $3,866 excluded for 1977).