ROSS F. JONES AND FRANCES N. JONES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9955–76.     Filed November 9, 1978.

---

*Jacob D. Davis*, for the petitioners.
*Milton J. Carter, Jr.*, for the respondent.

STERRETT, *Judge:* Respondent determined deficiencies in petitioners' income tax for the following years and in the following amounts:

| Year | Deficiency |
| --- | --- |
| 1973 | $2,268 |
| 1974 | 1,534 |

The only issue for decision is whether petitioners may exclude from gross income $5,200 in each of their taxable years 1973 and 1974 under section 105(d), I.R.C. 1954. On the outcome of this question rests a determination of the correct amount of petitioners' medical expense deductions for those years.

### FINDINGS OF FACT

The case was submitted to this Court under Rule 122, Tax Court Rules of Practice and Procedure, by joint motion of the parties. Hence all the facts have been stipulated and are so found. The stipulation and attached exhibits are incorporated herein by this reference.

Petitioners Ross F. Jones and Frances N. Jones are husband and wife who filed timely Forms 1040, individual income tax returns, for their taxable years 1973 and 1974. The petitioners have the calendar year as their tax accounting period, and we assume that they are on a cash basis. At the time they filed their petition herein, the taxpayers maintained their legal residence in Phoenix, Ariz. There is no indication in the stipulations with respect to where the petitioners filed their returns for these years. Petitioner Frances N. Jones is a party hereto solely because she filed jointly with her husband, petitioner Ross F. Jones. Petitioner, when used hereafter, shall refer solely to Ross F. Jones.

Petitioner was born August 25, 1900. From February 16, 1960, through December 31, 1970, petitioner was employed by the State of Arizona as a Superior Court judge. Superior Court judges in Arizona are elected to 4-year terms. In 1968, petitioner was elected to a term in office commencing January 1, 1969. Petitioner had to retire from the bench on December 31, 1970, due to physical disability. At the time of his retirement at age 70, petitioner had 2 years remaining on his then-current term, which would have ended December 31, 1972. Petitioner is of the belief that, except for his physical incapacity, he would have stood for reelection to the term commencing January 1, 1973, and that he would have been unopposed.

Retirement of judges in Arizona is governed by Arizona Revised Statutes,[1] tit. 38, ch. 5, art. 3, secs. 38–801—38–807. Only three of these sections are relevant here and they say, in material part:

Sec. 38–801. Eligibility for retirement payments; amount; widows' or widowers' benefits; application

A. Every judge of the supreme court, every judge of the court of appeals, and every judge of the superior court who resigns his office or whose service is otherwise terminated as a judge and who has served for twenty years on the supreme court, the court of appeals, or on the superior court, or on any combination of such courts, shall, upon attaining the age of sixty-five years, receive monthly for the remainder of his life after the date of his application therefor an amount equal to two-thirds of his monthly pay at the time of his resignation from office or the termination of his service, which shall be paid from the judges' retirement fund. If the amount standing to the credit of the fund at any time is insufficient to pay the full amount due all claimants entitled thereto, payment shall be made to the respective claimants pro rata only for that proportion of the total amount available in the fund which the amount due each claimant bears to the total amount due all claimants.

B. Any judge who hereafter resigns his office or whose service is otherwise terminated as judge and who has served not less than twelve years as judge on the supreme court, the court of appeals, or on the superior court, or on any combination of such courts, shall, upon attaining the age of sixty-five years, whether then in or out of office, be entitled to receive after the date of his application therefor, an amount equal to the proportion of the maximum benefits provided for in subsection A that his total years of service as a judge bears to twenty years, but not exceeding the maximum amount provided for in subsection A.

     \*       \*       \*       \*       \*       \*       \*

D. When a judge or surviving spouse of a judge is qualified for and desires to receive the benefits under the provisions of this section, a written

---

[1]Hereafter, ARS.

application shall be filed with the governor accompanied by an affidavit as to the judge's age or date of death and the duration and particulars of his service. If it appears that the applicant is entitled to receive such benefits, the governor shall certify the applicant's name to the assistant director for the division of finance for payment of such benefits.

Sec. 38–802. Retirement for physical or mental incapacity; application; amount

A. A judge of the supreme court, the court of appeals, or superior court who has served in any or a combination of such courts for not less than five years and who is permanently incapacitated, physically or mentally, to perform the duties of his office, may file with the governor, either personally or by his next friend or guardian, a written application for retirement, accompanied by an affidavit as to the duration and particulars of his service and the nature of his incapacity.

B. The governor shall appoint a board of three physicians licensed to practice in this state, who shall make an examination of the applicant and report the results thereof in writing. If in the opinion of a majority of the board the applicant is permanently incapacitated, physically or mentally, to perform the duties of his office, the governor shall declare the applicant retired and the office vacant.

C. The governor shall file the report of the examining board with the secretary of state, and certify the name of the retired judge to the commissioner of finance as entitled to the retirement payments provided for herein. Judges thus retired having ten years or more of such service shall receive the maximum benefits provided for in subsection A of section 38–801. Those having service of five years or more but less than ten shall receive an amount equal to the proportion of the maximum benefits provided for in subsection A of section 38–801 that his total years of service as a judge bears to ten years, but not exceeding the maximum amount provided for in subsection A of section 38–801.

Sec. 38–804. Retirement fund; termination of services of judge; refund; reinstating retirement status

A. There shall be a judges' retirement fund which shall be used exlusively for retirement payments as provided in this article, and from which all retirement pay shall be made. The fund shall be composed of the following:

1. Any provision of law to the contrary notwithstanding, twenty-five per cent of all fees collected by the clerk of the superior court in each county, twenty-five per cent of all fees paid in to the clerk of each division of the court of appeals, and twenty-five per cent of all fees paid in to the clerk of the supreme court shall be set aside monthly to the credit of the fund.

2. The assistant director for the division of finance, after June 17, 1950, shall make a deduction of five and one-half per cent from all salary claims upon the state of the judges of the supreme court, the court of appeals, and superior court, and the board of supervisors of each county shall make a deduction of five and one-half per cent from all salary claims upon the county of judges of the superior court, but if any judge holding office upon June 18, 1950, files with the assistant director for the division of finance and the board of supervisors

written objection to such deduction, none shall be made until after expiration of his term of office.

B. Any judge whose services have terminated prior to having received any retirement payments as provided in this article shall be entitled to receive, and there shall be refunded to him all contributions made by him to the retirement fund, upon such judge or his legal representatives filing with the governor on application therefor supported by affidavit establishing the termination of his services and the amount contributed by him. The governor shall thereupon transmit the application to the state treasurer for certification and payment.

C. In the event a judge withdraws the contributions he has made to the retirement fund he then forfeits his retirement service, but he may reinstate his retirement status by paying into the fund the amount he withdrew, without interest.

Pursuant to ARS section 38–802(A), petitioner filed an application for retirement with the Governor of Arizona sometime prior to December 31, 1970. Pursuant to ARS section 38–802(B), three physicians certified to the Governor, by letter dated December 1, 1970, that petitioner was by reason of physical disability, permanently incapacitated to perform the duties of his office. On December 11, 1970, the Governor certified to the commissioner of finance that petitioner was entitled to retirement payments. Such certification was required by ARS section 38–802(C). Petitioner's disability payments, which are referred to as deferred compensation payments in petitioner's Form W–2 filed with his 1973 return, commenced January 1, 1971.

During the latter part of 1974, the Arizona constitution was amended, effective December 5, 1974, to provide for mandatory retirement of Arizona judges at age 70. Prior to this time there had been no mandatory retirement age for Arizona Superior Court judges. By letter to petitioner dated November 13, 1974, the Arizona State attorney general stated his opinion that the constitutional amendment was "not retroactive in any respect."

In calendar year 1973, petitioner expended $309 for medicine and drugs and $3,312 for medical and dental expenses. In 1974 petitioner expended $339 for medicine and drugs, and $971 for medical and dental expenses.

## OPINION

This case involves the retirement of a State trial court judge. Petitioner retired for reasons of physical disability at the age of 70, exactly halfway through his then current term of office. At

the time of his retirement, petitioner had been in office a total of almost 11 years—from February 16, 1960, to December 31, 1970. The record does not reveal any details, or even the nature, of the disability which caused petitioner's retirement. As they stood at the time of petitioner's retirement, the applicable ARS provisions treated a judge retiring due to disability more liberally than a judge retiring for service. ARS section 38–801(B) requires that, at a minimum, a judge retiring for service must have served on the bench a total of 12 years to receive a retirement pension when he reaches age 65. A judge retiring for service would need 20 years on the bench to qualify for receipt of the maximum retirement benefit, i.e., two-thirds of his monthly salary. ARS sec. 38–801(A). On the other hand, judges retiring for *disability*, qualify for the maximum retirement benefit after only 10 years or more of service as a judge. ARS sec. 38–802(C).

Petitioner's theory behind his use of section 105(d),[2] to exclude $5,200 of deferred compensation from his gross income, centers around section 1.105–4(a)(3)(i)(*a*) and (*b*),[3] and section 1.79–

---

[2]Sec. 105 as it stood in 1973 and 1974, said in relevant part:

SEC. 105 [1954 Code]. (a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

(d) WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. * * *

(e) ACCIDENT AND HEALTH PLANS.—For purposes of this section and section 104—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) amounts received from a sickness and disability fund for employees maintained under the law of a State, * * *

shall be treated as amounts received through accident or health insurance.

[3]All references to regulations are to those regulations as they stood in 1973 and 1974 unless otherwise noted.

Sec. 1.105–4(a), Income Tax Regs., provided in relevant part in the years at issue herein:

Sec. 1.105–4 Wage continuation plans. (a) *In general.* (1) Subject to the limitations provided in this section, section 105(d) provides an exclusion from gross income with respect to amounts referred to in section 105(a) which are paid to an employee through a wage continuation plan and which constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness.

(2)(i) Section 105(d) is applicable only if the wages or payments in lieu of wages are paid pursuant to a wage continuation plan. The term "wage continuation plan" means an accident or health plan, as defined in section 1.105–5, under which wages, or payments in lieu of wages, are paid to an employee for a period during which he is absent from work on account of a personal injury or sickness. Such term includes plans under which payments are continued as long as the employee is absent from work on account of personal injury or sickness. * * *

2(b)(3), Income Tax Regs. His reasoning is as follows: Section 1.105–4(a) (2)(i) and (a)(3)(i)(*a*), Income Tax Regs., says that the section 105(d) exclusion from gross income applies to amounts received from or attributable to an employer payable under a plan in lieu of those amounts that the employee *would* have received as compensation for work performed but for his debilitating personal injury or sickness.[4] Further, section 105(d) excludes from gross income only such amounts as are received by the employee prior to his "retirement age." Sec. 1.105–4(a)(3)(i)(*a*), Income Tax Regs. The obvious purpose of this exclusion is to disallow a "sick-pay" exclusion for retirement income.

The term "retirement age" is defined by section 1.105–4(a)(3)(i)(*b*), Income Tax Regs., by reference to section 1.79–2(b)(3), Income Tax Regs., where subdivisions (i), (ii), and (iii) put forth three definitions. These definitions say, in relevant part:

Sec. 1.79–2(b)(3) *Retirement age.* For purposes of section 79(b)(1) and this section, the meaning of the term "retirement age" is determined in accordance with the following rules—

---

(ii) Section 105(d) is applicable if, and only if, the employee is absent from work and such absence is due to a personal injury or sickness. Thus, if an employer has a plan for continuing the wages of employees when they are absent from work, regardless of the cause of the absence from work, section 105(d) is applicable to any payments made under this plan to an employee whose absence from work is in fact due to a personal injury or sickness. On the other hand, although the terms of a plan provide that benefits are to be continued only as long as the employee is absent from work on account of a personal injury or sickness, section 105(d) does not apply to payments made to an employee for a period of absence from work where such absence is not in fact due to a personal injury or sickness.

(3)(i)(*a*) Section 105(d) applies only to amounts attributable to periods during which the employee would be at work were it not for a personal injury or sickness. Thus, an employee is not absent from work if he is not expected to work because, for example, he has reached retirement age. If a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension or annuity as long as he is disabled, section 105(d) is applicable to any payments which such an employee receives under this plan before he reaches retirement age as defined in (*b*) of this subdivision, but section 105(d) does not apply to the payments which such an employee receives after he reaches such retirement age. * * *

(*b*) The term retirement age as used in (*a*) of this subdivision has the same meaning as that term has in paragraph (b)(3) of sec. 1.79–2, except that, for purposes of applying the provisions of paragraph (b)(3)(i) of sec. 1.79–2 in the case of payments received by the employee to which this section applies, the retirement age of the employee is to be determined only with regard to the particular pension or annuity plan under which such payments are made.

[4]"Personal injury" and "sickness" were defined in the years in issue as follows:

Sec. 1.105–4(g), Income Tax Regs.

(g) *Definitions.* The term "personal injury" as used in this section, means an externally caused sudden hurt or damage to the body brought about by an identifiable event. The term "sickness" as used in this section, means mental illnesses and all bodily infirmities and disorders other than "personal injuries". Diseases, whether resulting from the occupation or otherwise, are not considered personal injuries, but they are treated as sickness.

(i)(*a*) If the employee is covered under a written pension or annuity plan of the employer providing such individual group-term life insurance on his life (whether or not such plan is qualified under section 401(a) or 403(a)), then his retirement age shall be considered to be the earlier of—

(*1*) The earliest age indicated by such plan at which an active employee has the right (or an inactive individual would have the right had he continued in employment) to retire without disability and without the consent of his employer and receive immediate retirement benefits computed at either the full rate or a rate proportionate to completed service as set forth in the normal retirement formula of the plan, i.e., without actuarial or similar reduction because of retirement before some later specified age, or

(*2*) The age at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which he last belonged.

\* \* \* \* \* \* \*

(ii) In the absence of a written employee's pension or annuity plan described in subdivision (i) of this subparagraph, retirement age is the age, if any, at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which the particular employee last belonged, provided such age is reasonable in view of all the pertinent facts and circumstances.[5]

(iii) If neither subdivision (i) or (ii) of this subparagraph applies, the retirement age is considered to be age 65.

Petitioner then points to the holdings of four cases which hold that the definition of "retirement age," contained in section 1.105–4(a)(3)(i)(*b*), Income Tax Regs., through that subdivision's inclusion by reference of the definition of retirement age set out in section 1.79–2(b)(3)(i)(*a*), Income Tax Regs., is invalid as an attempted withdrawal by the Commissioner of a statutorily conferred benefit. These cases are *Walsh v. United States*, 322 F. Supp. 613 (E.D. N.Y. 1970); *Brooks v. United States*, 473 F.2d 829 (6th Cir. 1973); *Jovick v. United States*, 492 F.2d 1215 (Ct. Cl. 1973); and *Reardon v. United States*, 491 F.2d 822 (10th Cir. 1974). From these cases petitioner makes the following points: The section 1.105–4(a)(3)(i)(*b*), Income Tax Regs., definition of retirement age contained in section 1.79–2(b)(3), Income Tax Regs., cannot apply to him because it has been held invalid by the above courts, and since Arizona had no mandatory retirement age when petitioner retired, all petitioner's pension payments have been received during a period that he would have been at work but for his physical disability and *before* his retirement age (there being none). Thus, petitioner concludes, he

---

[5]This language is remarkably like that in Rev. Rul. 57–76, 1957–1 C.B. 66.

should get the section 105(d) $5,200 exclusion for amounts received in the taxable years in issue.

Respondent answers these arguments by pointing out on brief that all the cases relied upon by petitioner deal only with the definition of retirement age given in section 1.79–2(b)(3)(i)(*a*), Income Tax Regs., and incorporated into the regulations under section 105 by way of section 1.105–4(a)(3)(i)(*b*), Income Tax Regs. Thus (argues respondent), even if the Court should agree with the above-cited cases that the subdivision (i) definition is void, we should still apply the catch-all definition stated in subdivision (iii), i.e., that "retirement age" means age 65 if the other definitions are inapplicable. If a retirement age of 65 is applied to these facts, then all petitioner's pension payments are post retirement and are not subject to the section 105(d) exclusion.

We have examined the cases upon which petitioner relies and find them inapposite. We hold for respondent. Each case relied upon by petitioner involves the early retirement, due to physical disability, of some relatively young employee, *before* his employer's mandatory retirement age. In *Walsh v. United States, supra,* the taxpayer was 50 years old when he was retired for disability and began receiving disability payments from the New York Fire Department Pension Fund, a written plan, after almost 20 years of service. Retirement for service was mandatory at age 65. The court found that the taxpayer had intended to work until mandatory retirement age and had not intended to retire early. *Walsh v. United States, supra* at 615. The taxable year involved was 1965. The amendment to section 1.105–4(a)(3), Income Tax Regs., which first defined retirement age by reference to section 1.79–2(b)(3), Income Tax Regs., had been promulgated July 6, 1966. 31 Fed. Reg. (1966). Since the Commissioner did not indicate in T.D. 6888, 1966–2 C.B. 23, which announced the new regulation, that it was to be given only prospective effect, the court felt constrained to pass on its applicability to the case before it. Since the taxpayer had retired under the provisions of the firemen's pension fund mentioned above, the court found itself in section 1.79–2(b)(3)(i)(*a*), Income Tax Regs. The court found that subdivision to be "invalid as adding an unauthorized restriction on a statutory benefit" when applied in a section 105 context. *Walsh v. United States, supra* at 619.

The *Brooks v. United States, supra,* case involved an employee of 37 years with E. I. du Pont De Nemours & Co. The taxpayer therein was retired under a provision of that company's written pension plan at his age 60, due to a heart condition. Mandatory company retirement age was 65 years of age. The parties stipulated that taxpayer, except for his illness, would have continued to work for the company until age 65. Once again, section 1.105-4(a)(3)(i)(*b*), Income Tax Regs., put the parties into section 1.79-2(b)(3), Income Tax Regs. Because du Pont had a written company retirement plan, the section 1.79-2(b)(3)(i)(*a*), Income Tax Regs., definition of retirement age was applicable. (More particularly, the court here dealt only with section 1.79-2(b)(3)(i)(*a*)(*1*), Income Tax Regs.) Here also the court objected to the interpretation of retirement age reflected in that subdivision as being an invalid deprivation by regulation of a statutorily conferred benefit under section 105 (*Brooks v. United States, supra* at 832) and held the subdivision invalid in the section 105(d) context.

In *Jovick v. United States, supra,* the taxpayer was retired for disability at age 54 after 28.5 years of Government service. Mandatory retirement age was 70. Plaintiff taxpayer was then a member of the United States Civil Service Retirement System, a written plan. Again the court dealt only with section 1.79-2(b)(3)(i)(*a*)(*1*) and (*2*), Income Tax Regs., and held that subdivision invalid saying:

An employee who absents himself from work because of retirement for disability prior to his mandatory retirement age is, we think, one of the class of individuals intended to be benefited by the statute. [*Jovick v. United States, supra* at 1217.]

In the case of *Reardon v. United States, supra,* the plaintiff was retired from Government service at age 51 on total disability. Mandatory retirement age was 70. As had the other courts above, the Tenth Circuit dealt only with the section 1.79-2(b)(3)(i) (*a*), Income Tax Regs., definition of retirement age. It agreed that subdivision was invalid and ineffective to deprive the taxpayer of the benefits of section 105(d) prior to his mandatory retirement age.

None of these cases dealt with a situation in which there was no mandatory retirement age. Yet it is only in the context of a mandatory retirement age that the rule of these decisions—i.e., that the definition of retirement age contained in section 1.79–

2(b)(3)(i)(*a*), Income Tax Regs., and incorporated into section 105(d) through section 1.105–4(a)(3)(i) (*b*), Income Tax Regs., is a deprivation of a statutorily bestowed benefit—can have any meaning. It is only where the taxpayer has a right to work until some prior established age which has not yet been reached (absent some default on his part which would justify firing him), that we can realistically speak of some sort of entitlement to a statutory benefit which accrues only to those who are absent from work. We do not believe that it was Congress' intent, in enacting section 105(d) and its predecessors, to provide a permanent retirement subsidy to those who retire for disability under a plan without a mandatory retirement age—no matter how old the retiree gets, or how old he was when he retired. In our case, petitioner would not have reached retirement age, within the meaning of section 1.79–2(b)(3)(i)(*a*), Income Tax Regs., until his age 71, i.e., on February 16, 1972, when he was both 65 years of age or over, *and* had 12 years on the bench. ARS 38–801(B). Age 71—unlike age 51 (*Reardon*), age 54 (*Jovick*), age 60 (*Brooks*), or age 50 (*Walsh*)—is not an unreasonable time at which to cut off the benefits of section 105(d) to a retiree who has no mandatory retirement age. Thus we do not believe that, in this case, the operation of section 1.79–2(b)(3)(i)(*a*), Income Tax Regs., would result in the deprivation to petitioner of any statutory entitlement.

But we need not rest our decision on a definition of retirement age questioned by so many courts.[6] Even if we accept petitioner's arguments that the section 1.105–4(a)(3)(i)(*b*), Income Tax Regs., definition of "retirement age," as contained in section 1.79–2(b)(3)(i), Income Tax Regs., should be held invalid as applied to our facts, we are still presented with the question of the applicability of the other two subdivisions of the section 1.79–2(b)(3), Income Tax Regs., definition: sec. 1.79–2(b)(3)(ii) and (iii), Income Tax Regs. Admittedly, the definition in section 1.79–2(b)(3)(ii), Income Tax Regs., cannot apply here because there is a written pension plan applicable—which is set out in statutory form as ARS section 38–804[7] —and there is, in any

---

[6]We note that the Service, in T.I.R. 1283, par. 55,068, 6 P–H Fed. 1974, announced its intention to allow taxpayers who retired for disability prior to a *mandatory* retirement age to take the sec. 105(d) exclusion (where the issue arises in a refund suit). This position with respect to the mandatory retirement age requirement was adopted as the rule in sec. 105 regulations as amended by T.D. 7352, filed Apr. 9, 1975. T.D. 7352, 1975–1 C.B. 34, 38.

[7]Sec. 105(e), I.R.C. 1954 (1973 and 1974), n. 2 *supra.*

event, no evidence that Arizona had any "practice" with respect to terminating judges due to age.

Thus, we are left with the section 1.79–2(b)(3)(iii), Income Tax Regs., catch-all definition of retirement age as being 65. Since we have been cited to no case declaring this subdivision invalid, we must decide for ourselves whether it is, as applied to these facts, "unreasonable and plainly inconsistent with the revenue statutes," *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948).

The incorporation of the definition of "retirement age" in section 1.79–2(b)(3), Income Tax Regs., by section 1.105–4(a)(3)(i)(*b*), Income Tax Regs., is nothing more than an attempt to limit the application of section 105(d) to those cases to which Congress intended it should apply. The section 105(d) exclusion applies to "wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness." Sec. 105(d). Thus, section 105(d) is applicable if, and only if, the employee is (1) absent from work, and (2) such absence is due to personal injury or " sickness." The cases cited by petitioner stand for two propositions: (1) That an employee cannot be absent from "work" in a section 105 sense if he is beyond the mandatory retirement age, since there is then no work to be absent from and, (2) that he is absent from work if he is forced to retire before his mandatory retirement age due to disability. In this way, the benefit of section 105(d) is provided to those who need it, i.e., those who cannot work for a full wage for some period of time during that part of their lives when they would normally be working, but is denied to those who are, or could be, retired. These latter persons fall under different provisions of the Code. See, e.g., sec. 401, et seq.; sec. 72.

The rule of the cases cited to us by petitioner should not be extended to include within the protection of section 105(d) the pension payments of a 73-year-old retiree. No case has held that the section 105(d) exclusion is available to the disabled employee for the rest of his life. Defining the limits of the application of section 105(d) is what the reference in section 1.105–4(a)(3)(i)(*b*), Income Tax Regs., to section 1.79–2(b)(3), Income Tax Regs., is all about. Because they involved plans with mandatory retirement ages, defining the limits of section 105(d) is something with which the courts in the cases cited to us by petitioner did not have to deal. Because our case involves no such mandatory

retirement age, it is what we must here do. We hold that section 1.79–2(b)(3)(iii), Income Tax Regs., definition of retirement age may validly be applied to cases where there is no other mandatory retirement age.[8]

But even if we were not to apply any part of section 1.79–2(b)(3), Income Tax Regs., we could still not find for petitioner for two additional reasons. As mentioned above, petitioner's last term in office ran until December 31, 1972. On brief petitioner stated that he "usually ran unopposed for office." It was stipulated that (1) he would have run for the next term if not disabled, and (2) it was petitioner's opinion that "he would have run unopposed." It is a fact that petitioner's term mandatorily expired on December 31, 1972. We have no way of assessing petitioner's optimism that, had he run again, he would have run unopposed and hence have been reelected. However, as a matter of law we must take into account the potentiality that the voters might have retired petitioner as of December 31, 1972, against his wishes. A fact of elective life is the possibilty of a voter-inspired retirement. The years before us, 1973 and 1974, then conceivably followed what might have been petitioner's mandatory, albeit involuntary, retirement.

Related to this fact of elective life is that, while the section 105(d) exclusion is only for those payments received while an employee is "absent from work" (sec. 1.105–4(a)(2)(ii), Income Tax Regs.), petitioner has not shown us that he was absent from work after the end of his last term. Thus section 105(d) could not apply to petitioner's taxable years 1973 and 1974.

The disallowance of petitioner's exclusion from income of $5,200 per year under section 105(d) for his taxable years 1973 and 1974 affects petitioner's medical expense deduction for each of those years.

*Decision will be entered under Rule 155.*

---

[8] In an unreported opinion of this Court, *Golden v. Commissioner,* T.C. Memo. 1971–162, we were presented with the retirement for disability of a California municipal judge after many years on the bench. The petitioner there claimed the sec. 105(d) exclusion. His retirement payments were made out of a fund similar to that set up by ARS sec. 38–804. The Court had no evidence that the State had any practice with respect to retirement of its judges and there appeared to be no mandatory retirement age. *Golden v. Commissioner, supra* at n. 14. The Court noted the *Walsh v. United States,* 322 F.Supp.

---

613 (E.D. N.Y. 1970), case, but went on to apply the definitions of retirement age stated in sec. 1.79–2(b)(3), Income Tax Regs., as alternative definitions and settled on a retirement age as defined in subdivision (iii), i.e., age 65. Since petitioner was over that retirement age during the year in issue, the Court found that sec. 105(d) could not apply. In *Golden v. Commissioner, supra,* the issue of the validity of the sec. 1.105–4(a)(3)(i)(*b*), Income Tax Regs., definition of retirement age was not challenged by the petitioner. It has been challenged by petitioner here.