*Decision will be entered for the respondent in docket No. 4590–80.*

PIETRO AND CHRISTINA RUGGERE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7078–79.     Filed June 14, 1982.

Pietro Ruggere, pro se.
*William F. Halley*, for the respondent.

NIMS, *Judge*: Respondent determined a deficiency in peti-

tioners' Federal income tax for the taxable year 1975 of $1,562.[1] The issues for decision are (1) the constitutionality of several provisions contained in sections 104[2] and 105 pertaining to the treatment of $5,610 of disability payments received by petitioners in 1975: (2) whether petitioners are entitled to deduct $6,032 as an offset against respondent's inclusion of $5,610 in petitioners' 1975 income; and (3) whether petitioners were unconstitutionally denied the right to counsel in their prosecution of the instant case.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference.

Petitioners Pietro and Christina Ruggere, husband and wife, resided in Turnersville, N.J., at the time the petition was filed.

Pietro Ruggere (hereafter petitioner) was born on June 29, 1896. During World War I, he served overseas for approximately 10 months in the active service of the U.S. Army.

In 1930, petitioner was a civilian employee of the Navy, working as a "joiner" in the Philadelphia Naval Shipyard in Philadelphia, Pa. A joiner fabricates, assembles, installs, and repairs wood articles, interior wood finish, cabins, and wood deck structures for ships and boats; installs insulation and lays deck and floor covering on ships and boats; makes models and mockups for planning or demonstration purposes; and constructs, installs, and repairs furniture, fine cabinet work, models or mockups, and similar items requiring precision shaping, fine fitting, mortising and tenoning, doweling, steam bending, turning, and molding of irregularly shaped parts, on other than ship and boat work.

In 1930 or 1931, petitioner accidentally bored a 3/4-inch hole in his right foot with a pneumatic drill while working at the shipyard. In an accident at work sometime during the 1950's, petitioner nearly severed his left index finger.

---

[1] By stipulation, respondent concedes that the $1,562 figure is the product of an erroneous computation in the statutory notice of deficiency and that should respondent prevail, the petitioners are only liable for a deficiency of $955.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year at issue.

On November 1, 1963, petitioner applied for a civil service disability retirement. Such application was prompted by the results of a Government-sponsored X-ray program and by the suggestion of his employer. At the time of his application, petitioner stated that he could not carry anything because of pain in the chest and that he had had a heart attack in 1958.

After further examination, petitioner was diagnosed as being permanently disabled from performing his job as a joiner or in other positions of the same grade or class. In descending order of importance, the medical officer in charge listed the following health problems as leading to petitioner's total disability: (1) Left branch bundle block; (2) symptoms of angina pectoris on mild effort; (3) infiltrative lesion of right lung field.

On January 13, 1964, petitioner's claim for disability retirement was allowed. Thereafter, petitioner received payments under a disability retirement annuity awarded under the disability retirement provisions of 5 U.S.C. sec. 8337 and computed under the general formula for computing optional retirement annuities in 5 U.S.C. sec. 8339(a).

Petitioner's total contribution of his own funds to the Civil Service Retirement and Disability Fund was $6,032.

Petitioner's initial gross monthly annuity rate was $239, effective February 21, 1964. Under the cost-of-living provisions of 5 U.S.C. sec. 8340, petitioner's monthly annuity rate was periodically increased as follows:

| Effective date | Gross monthly annuity |
|---|---|
| 12/1/65 | $254 |
| 1/1/67 | 264 |
| 5/1/68 | 274 |
| 3/1/69 | 285 |
| 11/1/69 | 299 |
| 8/1/70 | 316 |
| 6/1/71 | 330 |
| 7/1/72 | 346 |
| 7/1/73 | 367 |
| 1/1/74 | 387 |
| 7/1/74 | 411 |
| 8/1/74 | 431 |

1/1/75 ......................... $462
8/1/75 ......................... 486

During the 1975 taxable year, petitioner received annuity payments totaling $5,610.

Petitioner's annuity was not received for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 831 of the Foreign Service Act of 1946 as amended (22 U.S.C. 1081; 60 Stat. 1021).

On their 1975 income tax return, petitioners failed to report any portion of the annuity payments they received that year as income. In his statutory notice of deficiency, respondent included in petitioners' income all $5,610 of annuity payments received in 1975.

On several occasions, petitioners and petitioners' son, Joseph P. Ruggeri, requested of the Tax Court that Joseph P. Ruggeri be allowed to speak and act on behalf of petitioners during the trial of this case. Joseph P. Ruggeri is not an attorney.

By letters dated February 5, 1980, and February 20, 1980, this Court advised the petitioners that their son could not formally represent them because he was not admitted to practice before the Court. The Court further stated that petitioners' son could prepare any document that would be submitted to the Court, but that petitioners would have to sign such document themselves, and that should a trial prove necessary, the son would be allowed to sit at the petitioners' table with his parents.

During the trial of this case, Joseph P. Ruggeri was permitted to sit at petitioners' table and was permitted to assist his father in the presentation of his father's testimony.

## OPINION

### Taxation of Disability Payments

Section 72(a) provides that gross income includes amounts received as an annuity. Section 72(d) provides that in the case of an annuity where part of the consideration is furnished by an employee and part by his employer, if the employee's total contribution is less than the aggregate amount of the first 3

years' annuity payments, then all annuity payments received are excludable from the employee's income until the employee receives back payments equal to his total contribution; thereafter, all annuity payments received by the employee are fully taxable.[3]

Section 104 provides for the exclusion from gross income of certain compensation for injuries or sickness. In particular, during 1975, section 104(a)(4) provided for the exclusion from gross income of—

(4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 831 of the Foreign Service Act of 1946, as amended (22 U.S.C. 1081; 60 Stat. 1021).

Section 105 provides for the inclusion in gross income of amounts received by an employee through accident and health insurance to the extent such amounts are attributable to employer contributions, but the exclusion of such amounts if they constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness.[4]

---

[3]During the year before the Court, sec. 72(d) provided, in relevant part:

SEC. 72(d). EMPLOYEES' ANNUITIES.—
  (1) EMPLOYEE'S CONTRIBUTIONS RECOVERABLE IN 3 YEARS.— Where —
    (A) part of the consideration for an annuity, endowment, or life insurance contract is contributed by the employer, and
    (B) during the 3-year period beginning on the date (whether or not before January 1, 1954) on which an amount is first received under the contract as an annuity, the aggregate amount receivable by the employee under the terms of the contract is equal to or greater than the consideration for the contract contributed by the employee,
then all amounts received as an annuity under the contract shall be excluded from gross income until there has been so excluded (under this paragraph and prior income tax laws) an amount equal to the consideration for the contract contributed by the employee. Thereafter all amounts so received under the contract shall be included in gross income.

[4]During 1975, sec. 105 provided, in relevant part:

SEC. 105(a). AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.— Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

    *        *        *        *        *        *        *

  (d) WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period

It is respondent's position (1) that after petitioner reached the Federal mandatory retirement age of 70[5] on June 29, 1966, all payments received by petitioners were taxable as annuity payments under section 72, and (2) that under the provisions of section 72(d), all payments received by petitioners in the year 1975 were includable in their income. Further, respondent argues, no part of such payments received in 1975 were excludable from petitioners' income by virtue of sections 104 and 105 and the regulations thereunder.

Petitioners have conceded the correctness of respondent's interpretation of the interplay of sections 72, 104, and 105 and the regulations thereunder as applied to their case.

What petitioners do challenge, however, is the constitutionality of sections 104(a)(4) and 105(d) in an effort to bring their disability payments within the exclusions from gross income those sections provide.

Petitioners first challenge section 105(d) which provides for the exclusion from gross income of amounts constituting wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness. As interpreted in respondent's regulations, section 105(d) only allows the exclusion from gross income of such payments prior to the taxpayer's attaining mandatory retirement age; thereafter, such payments are fully taxable. Sec. 1.105–4(a)(3)(i)(A), Income Tax Regs. The rationale of this limitation is that "an employee cannot be absent from 'work' in a section 105 sense if he is beyond the mandatory retirement age, since there is then no work to be absent from." *Jones v. Commissioner*, 71 T.C. 128, 139 (1978).

Petitioners contend that making disability retirement payments fully taxable after mandatory retirement age is unconstitutional because when some workers are forced to retire early as a result of disability, their disability payments do not put them in the same position they would have been in had they continued to work to the regular retirement age. According to petitioner, if he had continued to work until age 70, he

during which the employee is absent from work on account of personal injuries or sickness;
* * *

[5]Prior to its repeal by sec. 5 of the Age Discrimination in Employment Act Amendments of 1978, Pub. L. 95–256, 92 Stat. 191, the mandatory retirement age for civil service employees was 70 years of age. 5 U.S.C. sec. 8335(a) (1976).

would have retired at a higher monthly annuity level than the one he was actually awarded for disability at age 67.

Since the statute makes no reference to mandatory retirement age, it is clear that petitioners' constitutional attack is on the validity of respondent's regulation, section 1.105–4(a)(3)(i)(A), Income Tax Regs. It is also clear that petitioners' argument is in the nature of a due process argument—i.e., that Congress may not tax disability retirement payments after mandatory retirement age.[6] We find this argument without merit.

In *Jones v. Commissioner, supra,* we held that the predecessor of the regulation challenged herein, which also limited the benefits of the section 105(d) exclusion to pre-mandatory-retirement years (among other limitations), carried out the intent of Congress in that respect. There is thus here no argument that the challenged regulation is invalid on statutory grounds.

The mandate for support by a reviewing court of a due process challenge to a revenue statute is not very compelling where, as here, there is no fundamental interest involved. A Federal taxing provision is not violative of the due process clause of the Fifth Amendment unless it classifies taxpayers in such a manner as to be arbitrary and capricious. *Hamilton v. Commissioner,* 68 T.C. 603, 606 (1977).

In the instant case, a possible rationale for the rule of the regulation is that disability payments often provide an incomplete measure of lost wages. To help compensate for this inequity between workers on disability and workers still working, Congress made disability payments nontaxable. After mandatory retirement age, however, there is no meaningful distinction between continued disability payments and normal pension payments, given the tax-favored treatment of disability payments before mandatory retirement age; and

---

[6]Petitioners concede that Congress has the constitutional power to set a mandatory retirement age for Federal workers. See *Vance v. Bradley,* 440 U.S. 93 (1979).

In their briefs, petitioners' arguments are generally couched in terms of equal protection under the 14th Amendment to the Constitution. The 14th Amendment, however, has no application to Federal tax statutes. *Hamilton v. Commissioner,* 68 T.C. 603, 606 (1977). Since petitioners are pro se litigants we have taken the liberty of recharacterizing their arguments as falling under either the equal protection component or the due process component of the due process clause of the 5th Amendment. Respondent is not prejudiced by this action since he has anticipated this recharacterization in his brief.

thus, Congress treats the two payments alike after normal retirement, taxing both.[7] See sec. 61(a)(1). That is to say that while pension payments may, in some cases, be greater than disability payments since pensions may be based upon one's working until normal retirement age, the discrepancy is undoubtedly substantially redressed by the aforementioned tax benefits conferred upon early retirees due to disability. We think this scheme of treatment is neither arbitrary nor irrational.

Petitioners' second constitutional argument is that the regulations under section 105(d) defining mandatory retirement age are (1) arbitrary, in that they leave up to the employer the determination of mandatory retirement age, and, indirectly, the taxability of disability payments, and (2) discriminatory, in that Federal workers who attain age 70[8] have to begin paying taxes on disability payments while some private-sector counterparts at that age do not. These are both due process and equal protection challenges to section 1.105–4(a)(3)(i)(B), Income Tax Regs., which provides:

> (B) The term "mandatory retirement age" as used in paragraph (a)(3)(i)(A) of this section means the age set by an employer for the mandatory retirement of employees in the class to which the taxpayer last belonged, unless such age has been set at an age higher than that at which it has been the practice of the employer to terminate, due to age, the services of such employees, or for purposes of tax avoidance. Where no age is set for mandatory retirement, such term means age 65, or, if higher, the age at which it has been the practice of the employer to terminate, due to age, the services of the class of employees to which the taxpayer last belonged.

In regard to petitioners' first attack on the above regulation, we hold that determining the taxability of disability retirement payment based on employer actions is not arbitrary and capricious. The purpose of this regulation is to establish an

---

[7]That Congress has the constitutional power to fully tax all disability payments as income can no longer be doubted. See *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955).

[8]Arguably, under sec. 1.105–4(a)(3)(i)(B), Income Tax Regs., the 1978 repeal of the mandatory retirement age for Federal workers (see note 5 *supra*) renders petitioners' disability payments taxable after age 65 or, if higher, the actual normal Federal retirement age. Cf. *Jones v. Commissioner*, 71 T.C. 128 (1978). Respondent, however, does not argue for such a retroactive result from the repeal; accordingly, we express no opinion on this subject.

Contrary to petitioners' assertions, though, there is nothing in the legislative history of the repeal to suggest that Congress disapproved of the current tax treatment of disability payments governed by sec. 1.105–4(a)(3)(i)(B), Income Tax Regs.

administratively ascertainable age after which it could be said that the particular taxpayer would not have continued working even if he had not been disabled. This determination is made by a reference to the particular workplace of the taxpayer, and we see no reason why one uniform age for all taxpayers (as petitioners suggest) would be any more useful in fulfilling the statutory purpose. The regulation, thus, does not violate due process.

Petitioners' second argument against the regulation is an equal protection challenge. The regulation requires some 70-year-olds to pay taxes on their disability payments while other 70-year-olds do not because the employers of the latter maintain a higher mandatory retirement age. This classification provided by the regulations does not involve either a fundamental interest or a suspect classification.[9] Accordingly, the proper level for review is the rational-basis test—i.e., whether the classification bears a reasonable relationship to some legitimate Government purpose. See *Dandridge v. Williams*, 397 U.S. 471 (1970).

In the instant case, the legitimate Government purpose is to grant a tax benefit to persons receiving disability pay when they would normally have been at work. The classification administratively aids that Government purpose by looking at each taxpayer's employer to determine whether the disability payment recipient actually would have been at work with that employer but for his injury or sickness. Therefore, the classification reasonably aids the accomplishment of a legitimate Government purpose and is constitutionally valid.

Petitioners next attack the constitutionality of section 104(a)(4) on equal protection grounds. That section, as interpreted by respondent in an interpretation petitioners do not challenge, provides for the exclusion from gross income of payments received by certain veterans for injuries resulting from active service. Petitioners concede that, under such an interpretation, their annuity payments are not excludable under section 104(a)(4). Cf. *Haar v. Commissioner*, 78 T.C. 864

---

[9]The classification does not really involve age discrimination as petitioners appear to believe. The challenged classification is between individuals of the same age, not individuals of different ages. In any event, a classification along age lines is not a suspect classification for equal protection analysis. *Vance v. Bradley*, 440 U.S. 93, 97 (1979); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312–314 (1976).

(1982). However, petitioners argue that section 104(a)(4) unconstitutionally classifies between veterans injured or disabled in active service and veterans, like petitioner, who become disabled for reasons not related to active military service.

This classification is also one subject to the rational-basis test under equal protection analysis, since no fundamental interest or suspect classification is involved. Therefore, in order to be valid, we need only identify a legitimate Government purpose which this classification reasonably furthers. See *Dandridge v. Williams, supra.*

As we see it, the legitimate Government purpose in granting exemptions to payments for injuries sustained in active military service is to recognize the hazards of war and to deal with service-related injuries uniformly. The mere fact that petitioner is a veteran does not, however, justify the claim that disability payments for non-service-related injuries are exempt from the Federal income tax. Accordingly, the distinction drawn by the statute is reasonable, and the statute, constitutional.[10]

Petitioners' remaining argument regarding the taxation of their disability payments is a statutory one. They argue that as an employee, petitioner contributed a total of $6,032 to his disability retirement annuity and that since he had never claimed a deduction for such contributions before 1975, he should be allowed to use that amount to offset respondent's inclusion of $5,610 of such payments in income in 1975.

Respondent determined that petitioner's annuity is an employee's annuity within the meaning of section 72(d), and the full amount of petitioner's total contribution was recoverable in the 3-year period after petitioner reached age 70 in 1966. Sec. 72(d)(1)(B). To the extent petitioner was entitled to exclude his total contribution from the annuity payments he received, he was entitled to do so only until he received back a total of $6,032 in annuity payments after his 70th birthday; this event occurred in mid–1968. Since petitioners concede the correctness of this statutory analysis, we so hold.[11] According-

---

[10]Whether this distinction is a wise one for policy, as opposed to constitutional, reasons is a matter for petitioners to argue to Congress and not to us.

[11]Cf. *Haar v. Commissioner,* 78 T.C. 864 (1982); *Chosiad v. Commissioner,* T.C. Memo. 1980–408.

ly, we cannot allow petitioner an exclusion for any of his contribution to his retirement annuity for the year before the Court: 1975.

## Representation by Persons Not Admitted To Practice Before the Tax Court

Petitioners' final argument is that this Court's refusal to let petitioners' son formally represent them in the trial and prosecution of this case violates their rights under the Sixth and Ninth Amendments to the Constitution.

Petitioners' son is not admitted to practice before this Court, nor is he an attorney. At trial, however, he was allowed to sit at petitioners' table and help his father in bringing forth the latter's testimony. He was also allowed to assist petitioners in preparing their case, though he was prohibited from signing documents which would bind petitioners in this Court.

We quote from *Cupp v. Commissioner*, 65 T.C. 68, 85–86 (1975), affd. 559 F.2d 1207 (3d Cir. 1977):

The requirement that only qualified persons are permitted to represent litigants before this Court is for the protection of litigants by insuring that only persons able to properly represent a party appear for him. Petitioner in this case was afforded full opportunity to be heard and to represent himself at the trial. Petitioner's reliance on the sixth amendment of the Constitution of the United States is totally misplaced. The sixth amendment of the United States Constitution deals with criminal prosecution and is not applicable to a civil proceeding. Petitioner here was afforded full opportunity to be heard and therefore we conclude that no rights of his were violated at the trial because a person not properly qualified to represent him before this Court was not permitted to act as his attorney during the trial. [Fn. ref. omitted.]

Accordingly, we hold petitioners' rights under the Sixth and Ninth Amendments of the Constitution were not violated by our actions in the instant case.

*Decision will be entered under Rule 155.*