EARL DAVID SHAFFER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shaffer v. Commissioner
Docket No. 23525-92
United States Tax Court
T.C. Memo 1994-618; 1994 Tax Ct. Memo LEXIS 625; 68 T.C.M. (CCH) 1455; December 19, 1994, Filed *625 Decision will be entered under Rule 155. Earl David Shaffer, pro se. For respondent: Donald E. Edwards. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, for petitioner's 1985, 1986, 1987, 1988, 1989, and 1990 taxable years, determined income tax deficiencies in the amounts of $ 7,515, $ 7,936, $ 4,569, $ 4,666, $ 3,728, and $ 4,536, respectively. Respondent also determined additions to tax under section 6651(a)(1) [1] in the amounts of $ 1,879, $ 1,984, $ 1,142, $ 1,167, $ 932, and $ 1,134, respectively. Respondent also determined additions to tax under section 6653(a)(1) in the amounts of $ 430 and $ 288 for the 1985 and 1988 tax years and under section 6653(a)(1)(A) in the amounts of $ 479 and $ 228 for the 1986 and 1987 tax years, plus 50 percent of the interest due on the entire deficiency under section 6653(a)(2) for the 1985 tax year and under section 6653(a)(1)(B) for the 1986 and 1987 tax years. Finally, respondent determined that petitioner is liable for additions to tax under section 6654 for the taxable years 1985 through 1990 in the amounts of $ 415, $ 363, $ 249, $ 291, $ 252, and $ 290, respectively. After the parties' concessions, *626 the following issues remain for our consideration: (1) Whether monthly payments petitioner received from a former employer are exempt from tax under section 104 or section 105, and (2) whether petitioner is liable for the additions to tax determined by respondent. FINDINGS OF FACT [2]
Petitioner resided in Bethany, Oklahoma, at the time his petition was filed in this case. Petitioner was a pilot for Northwest Airlines (Northwest) beginning in 1968. When he began with Northwest, he was advised that payment for medical disability would not be available *627 until after 10 years of service. At some time prior to 1982, petitioner and his wife became estranged and their marital relationship was eventually dissolved. Petitioner believed that his son was being physically abused, and he attempted to relieve the situation. After his attempts, petitioner received calls in the middle of the night, believes he was shot at by a passing car, and became paranoid and intimidated. His condition became so exacerbated that he experienced difficulty performing as a pilot for Northwest. For example, on one flight he omitted a pre-flight checklist item, which resulted in inadequate cabin pressure. In connection with his 1982 Federal Aviation Administration (FAA) certification, petitioner received a comprehensive medical examination, including psychometric studies and a consultation with a psychiatrist, all of which occurred at the Mayo Clinic in Rochester, Minnesota. The resulting doctor's report to Northwest indicated "the presence of a significant psychiatric disorder" in petitioner and the recommendation that he be immediately placed on medical disability status. Petitioner was also advised that his current FAA certificate was considered "invalid *628 regardless of its expiration date." In one piece of correspondence, petitioner's mental condition was described as having "the development of an underlying paranoid disorder manifested chiefly by * * * [his] firm conviction that individuals have attempted to do * * * [him] bodily harm and have also monitored private telephone conversations. [He] * * * also noted other harassments such as the activation of [his] * * * remote call pager." Although he had begun working for Northwest in 1968, petitioner did not continuously work for Northwest, and he was just short of 10 years of service at the time of his medical diagnosis. Northwest allowed him to complete exactly 10 years and 1 day by permitting him to use the accrued vacation and sick leave. Thereafter, during 1982, Northwest placed petitioner on disability retirement. He was to receive payments of approximately $ 2,500 per month subject to reduction should his Social Security disability benefits increase. The payments would reduce to appoximately $ 935 at age 60 and $ 745 at age 65 because of being displaced by petitioner's Social Security disability benefits. Petitioner did not contest the doctor's findings or Northwest's *629 decision to place him on medical disability retirement. From 1985 through 1990, petitioner received payments from Northwest in the generally reducing amounts of $ 31,238, $ 31, 238, $ 28,745, $ 26,964 and $ 26,964 and $ 26,964, respectively. Northwest sent petitioner an annual Form W-2P (Statement for Recipients of Annuities, Pensions, Retired Pay, or IRA Payments) reflecting the above payments. Northwest considered the payments made to petitioner to be taxable. Petitioner believed that these amounts were excludable from income under section 104. In addition to the payments from Northwest, petitioner had income from employment and/or interest in the amounts of $ 7,355, $ 10,506, $ 59, $ 6,797, and $ 6,373 for the taxable years 1985 through 1990. Believing that the payments from Northwest were nontaxable disability pay and that his other income was less than the standard deduction and personal exemption, petitioner did not file returns for 1985 through 1990. Respondent determined that the Northwest payments were taxable, and, hence, determined deficiencies in and additions to tax for failure to file, negligence, and failure to pay estimated tax. OPINION Petitioner makes a *630 two-pronged argument concerning the tax status of the payments he received from Northwest. First, he argues that such payments are exempt from tax within the meaning of the relief provisions of section 104 or 105 as "Compensation for Injury or Sickness" or "Amounts Received Under Accident or Health Plans." Should we decide that neither of these sections applies, petitioner argues that section 104 is unconstitutional because it does not provide equal protection under law because some classes of similarly situated people receive relief, and petitioner does not. Petitioner bears the burden of showing that respondent has erred in her deficiency determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). We first consider whether petitioner falls within the statutory parameters of section 104 or 105. Section 104 excludes from gross income certain categories of payments received as compensation for injuries or sickness. Included in those categories are: (1) Payments received under workmen's compensation acts; (2) damages received (by suit or agreement) on account of personal injuries or sickness; (3) certain amounts received through health and *631 accident insurance for personal injuries or sickness; (4) amounts received as a pension or annuity resulting from personal injuries or sickness from service in the military and certain other Government jobs; and (5) amounts received by a Federal employee from injuries that are a direct result of a violent terrorist attack. Petitioner does not come within the first, fourth, or fifth categories because he did not receive workmen's compensation and the amounts he received were not in connection with Federal employment or military service. With respect to the second and third categories, petitioner has not shown that the amounts he received were from employee-financed health and accident insurance, or from pursuing damages on account of personal injuries or sickness. Petitioner was not able to show what portion, if any, of the payments was funded by his own contributions rather than Northwest's. Accordingly, the amounts received are presumed to be taxable employer contributions. See Conroy v. Commissioner, 41 T.C. 685, 692-693 (1964), affd. per curiam 341 F.2d 290 (4th Cir. 1965); sec. 1.72-15(c)(2), Income Tax Regs.
At trial, *632 petitioner admitted that he thought it was useless to contest or litigate Northwest's decision to place him on disability retirement. The retirement payments do not come within the exemptions of section 104, absent proof that the payments are attributable to petitioner's contributions. Accordingly, we find that the payments to petitioner do not come within the statutory language of section 104. Section 105(a) provides generally for the inclusion in income of amounts received by an employee from accident or health insurance where such amounts (1) are attributable to employer contributions which were not gross income to the employee, or (2) are paid by the employer. As discussed above, petitioner has not shown who made the contributions and/or whether such contributions would have been included in petitioner's gross income if made by the employer. See Caplin v. United States, 718 F.2d 544, 547 (2d Cir. 1983); sec. 1.105-1(a), Income Tax Regs.Section 105(c) excludes from income health and accident payments which are for a permanent loss of use of a member or function of the body, or permanent disfigurement, if the payments are computed with reference *633 to the nature of the injury and not in regard to the period the taxpayer is absent from work. Petitioner was entitled to receive his payments because Northwest permitted him to increase his time of service to 10 years and 1 day through use of his sick and vacation time. We find therefore, that petitioner was receiving retirement payments, and his retirement was occasioned by his disability. Petitioner's condition was not caused by his work; instead, it was petitioner's condition that caused him to not be able to perform his work. Petitioner was permitted to retire early due to his condition. The payments he received were not computed with reference to the nature of his injury, as section 104(c) requires. Instead, he would have received the same benefits under the Northwest plan regardless of the severity of the condition that led to his disability. See Hines v. Commissioner, 72 T.C. 715, 720 (1979). No statutory relief from taxation is available to petitioner under section 104 or 105. Petitioner's second argument is that Congress' failure to provide relief for his situation constitutes a failure to afford him equal protection under the Constitution. *634 Petitioner argues that, because certain categories of Federal employees under similar circumstances would be entitled to section 104 relief, section 104 denies him both due process and equal protection of the law. We do not agree with petitioner on either issue. First, petitioner claims that section 104 violates due process of law. A Federal tax law is not violative of the Due Process Clause of the Fifth Amendment unless it classifies taxpayers in a manner that is arbitrary and capricious. Hamilton v. Commissioner, 68 T.C. 603, 606 (1977). In Ruggere v. Commissioner, 78 T.C. 979 (1982), we held that section 105(d), defining mandatory retirement age, was not arbitrary or capricious. We understand petitioner in the instant case to be arguing that section 104 applies irrationally; in other words, by applying to certain Federal employees while not applying to other employees. Section 104 would apply to a similarly situated Federal employee in the same way as it applies to petitioner: If a Federal employee were to receive a disability retirement pension comparable to that paid to petitioner, the amounts received by the *635 Federal employee generally would not fall within the section 104 exclusion provisions and would, thus, be taxable. See, e.g., Haar v. Commissioner, 78 T.C. 864 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983). A Federal employee would qualify for a section 104 exclusion, however, if the employee were to receive a pension or annuity as compensation for personal injuries or sickness attributable to service in the military and in certain other Government jobs, or were to receive disability income attributable to injuries that are a "direct result of a violent * * * terrorist attack". Sec. 104(a)(4) and (5). In enacting section 104(a)(4) and (5), Congress recognized certain risks faced both by the military in combat and by civilian employees of the U.S. Government. Thus, Congress decided to extend section 104 to exclude disability pay for injuries resulting from acts of terrorism. See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 131 (J. Comm. Print 1976). Excluding disability pay for injuries that result from acts of terrorism, we find, is a legitimate Government purpose. *636 Accordingly, we hold that section 104 is not irrational, arbitrary, or capricious and is, therefore, not violative of due process of law under the Fifth Amendment. Next, it is well settled that the Equal Protection Clause of the 14th Amendment does not apply directly to Federal legislation. [3] *637 Helvering v. Lerner Stores Corp., 314 U.S. 463, 468 (1941); Charles C. Steward Machine Co. v. Davis, 301 U.S. 548 (1937). [4] Although the 5th Amendment contains no Equal Protection Clause, if a classification in a Federal statute would be invalid under standards embodied in the Equal Protection Clause of the 14th Amendment, then, for those reasons, it would run afoul of the Due Process Clause of the 5th Amendment. Regan v. Taxation with Representation of Washington, 461 U.S. 540, 542 n.2 (1983). In Ruggere, we held that, with respect to the section 104(a)(4) classification for veterans injured or disabled in active service, it would be subject to the rational-basis test of equal protection, if equal protection applied. We further found that, needing only to identify a legitimate Government purpose for the classification, granting exemptions to recipients of payments received for injuries sustained while in active military duty was legitimate. See Regan v. Taxation with Representation of Washington, supra. Classifying individuals according to their having fallen victim to a terrorist attack is, likewise, a legitimate classification. Consequently, because there would be no equal protection violation if that clause applied, there is no corresponding *638 due process violation under the Fifth Amendment. Finally, we consider the additions to tax determined for each of the 6 taxable years in issue. Respondent determined that petitioner was delinquent in failing to file returns, negligent in not reporting the payments received from Northwest, and liable for an addition for failing to pay estimated tax. [5] Petitioner bears the burden of showing that the additions to tax are not applicable. Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner was dismissed from his position as a pilot because he had been found to *639 have "a significant psychiatric disorder". Petitioner's mental condition was the reason that he was allowed to retire shortly before the first taxable year under consideration in this case. Petitioner was also observed during the trial, and we must consider his mental state when the standard involves gauging whether he intentionally failed to file or whether he was negligent or intentionally disregarded the rules or regulations. See sec. 6654(e)(3); Williams v. Commissioner, 16 T.C. 893, 906 (1951); Jones v. Commissioner, T.C. Memo. 1988-542; Carnahan v. Commissioner, T.C. Memo. 1994-163. We find that petitioner had a significant psychiatric disorder and that he was mentally incapacitated during the period under consideration and, therefore, hold that he is not liable for the additions to tax. Due to agreements of the parties, Decision will be entered under Rule 155. Footnotes
1. Section references are to the Internal Revenue Code in effect for the tax years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The parties' stipulation of facts, along with the denominated exhibits are incorporated by this reference.↩
3. The 14th Amendment to the Constitution provides in pertinent part: "No State shall * * * deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, sec. 1; emphasis added. The Fifth Amendment to the Constitution states that "No person shall * * * be deprived of life, liberty, or property, without due process of law". U.S. Const. amend. V↩.
4. See Ruggere v. Commissioner, 78 T.C. 979, 986-987 (1982), where this Court did entertain a taxpayer's argument that sec. 104(a)(4) was violative of equal protection of the laws. However, the Court found that, under the rational-basis test of equal protection, sec. 104(a)(4)↩ was not unconstitutional.
5. The additions for failing to file and failure to make estimated payments were determined for each of the taxable years 1985 through 1990. The addition for negligence was determined for the 1985 through 1988 taxable years, but not for 1989 or 1990. In this regard, respondent provided no reason for this gap in her determination.↩